[No. 10180-1-III. Division Three. January 15, 1991.]

PARK HILL CORPORATION, ET AL, *Appellants,* v. DON SHARP, ET AL, *Respondents.*

284

*Roger Sharp*, for appellants.

*Michael R. Pickett*, for respondents.

THOMPSON, J.—The Sharps, et al., as assignees of Park Hill Corporation, appeal the dismissal of their cause of action for fraudulent transfer. They sought to hold parties to whom property had been transferred personally liable for the value of assets transferred to them. Because the court held the parties to whom the assets were transferred did not have the requisite intent to defraud, hinder or delay the creditor, the remedy prayed for is not available under either the Uniform Fraudulent Transfer Act (UFTA), RCW 19.40, or the Uniform Fraudulent Conveyance Act (UFCA), former RCW 19.40. Therefore, we affirm the dismissal.

Park Hill Corporation (PHC), as lessor, and Don Sharp, Incorporated—Better Homes and Gardens (DSI), as lessee, executed a 5-year lease of office space dated March 1, 1980 (PHC lease). At the time the PHC lease was executed, Mary Beth Bryan and Sally B. Chambers were the sole shareholders and directors of DSI. In March 1981, DSI transferred substantially all its assets to Aaro Real Estate Center, Inc. In exchange, Ms. Bryan and Mrs. Chambers were issued Aaro stock. DSI then ceased doing business and vacated the leased premises.

In June 1981, Ms. Bryan and Mrs. Chambers signed a personal guaranty of the PHC lease as consideration for

PHC's execution of a covenant not to sue Aaro, DSI, and other third parties in connection with an unrelated matter. They paid the base rental through August 1981, but did not pay property taxes or subsequent rental payments due under the PHC lease. PHC filed its first complaint in January 1982 against "those parties named in the covenant not to sue". On or about April 1, 1982, a portion of the leased premises was relet and in December 1982, PHC sold the premises.

By agreement dated September 17, 1981, Mrs. Chambers sold real property located in Illinois to Fulks. The Fulks agreement required annual payments over a 10–year period commencing September 17, 1982. On September 15, 1983, Mrs. Chambers assigned all her rights in the Fulks agreement to her four children, Melinda Ann Chambers Fisette, James Cash Chambers, Brenda Sue Chambers Pistolas, and Brian Alan Chambers, in equal shares. No consideration was given for the transfer, other than love and affection. The transfer was by means of an unrecorded assignment. At the time the assignment was made, the Fulks owed Mrs. Chambers approximately $82,500. Fulks made the annual payments on the contract for the years 1983 through 1985, then prepaid the contract balance at a discount in 1986. Mrs. Chambers collected all payments under the Fulks agreement and between 1983 and 1986 delivered a total of $21,444 to each of the four Chambers children.

On March 3, 1988, PHC and the Sharps filed an amended and supplemented complaint, naming Mr. and Mrs. Chambers, Ms. Bryan, the Chambers children, and DSI as defendants. This complaint alleged that PHC had been liquidated and its assets (including the lawsuit) distributed to its shareholders (Sharps). PHC and the Sharps asserted claims for breach of lease, liability on personal guaranty and tortious interference as to Mr. and Mrs. Chambers and Ms. Bryan, and added the Chambers children as defendants, alleging they were the recipients of a fraudulent conveyance from Mrs. Chambers (*i.e.*, assignment of the Fulks

agreement) in violation of RCW 19.40. They asked for an award of a money judgment against the Chambers children.

After trial, findings of fact and conclusions of law were entered. The court found that neither Mrs. Chambers nor the Chambers children intended to defraud, hinder or delay the creditors of Mr. and Mrs. Chambers. However, neither the findings nor conclusions indicated whether the trial court's decision was based on the UFTA[1] or the UFCA.[2] Based on the PHC lease and guaranty, the Sharps were given judgment against Ms. Bryan and Mr. and Mrs. Chambers in the principal amount of $24,461.10, which included rent, property taxes, commission costs, payments received under a sublease, together with an unspecified sum as interest. The trial court also awarded statutory costs and a $10,000 attorney fee to the Sharps under the lease provisions. The court dismissed the fraudulent conveyance claims against the Chambers children because of the extraordinary delay in prosecuting the lawsuit and the lack of diligence by the Sharps. Attorney fees requested by the Chambers children pursuant to RCW 4.28.185 were denied.[3]

The Sharps appealed only the dismissal of the fraudulent transfer cause of action against the Chambers children. The judgment ultimately awarded was amended to correct the interest rate and interest calculation. The amount awarded to the Sharps in the amended judgment was $56,048. Mr.

---

[1]The UFTA (RCW 19.40) was adopted in 1987, with an effective date of July 1, 1988. The term "transfer" rather than "conveyance" is used throughout the UFTA.

[2]The UFCA (former RCW 19.40) as adopted in 1945, was in effect in Washington until July 1, 1988. The term "conveyance" rather than "transfer" was used throughout the UFCA.

[3]RCW 4.28.185(5) provides that attorney fees may be awarded to a prevailing defendant served outside the state pursuant to Washington's long–arm statute. All of the Chambers children resided outside the state at the time the lawsuit was commenced and they were served outside the state. At the time of the transfer, three of the four children resided outside the state.

and Mrs. Chambers filed a "Notice of Cross Appeal"[4] of the decision imposing judgment, attorney fees, interest and costs against them in favor of PHC,[5] based on the guaranty and breach of lease. Ms. Bryan did not appeal.

The Sharps contend that a money judgment against the first transferees of a fraudulent conveyance or fraudulent transfer is a remedy available under both the UFTA and the UFCA, although they argue that the UFTA should be given retroactive effect. Additionally, the Sharps contend that attorney fees in connection with the fraudulent transfer or fraudulent conveyance claims should be awarded based on the lease which provides for fees if a suit is brought to recover rent due. The Chambers children contend they should have been awarded attorney fees under RCW 4.28.285.[6]

The UFCA does not specifically grant to a defrauded creditor the right to hold a transferee personally liable to the creditor for the value of the assets transferred. The issue of the availability of such relief under the UFCA was presented for the first time in this state in *Deyong Mgt., Ltd. v. Previs,* 47 Wn. App. 341, 735 P.2d 79 (1987). In *Deyong,* the court held a money judgment could be awarded to a creditor against a transferee if the transferee "knowingly accepted the property with an intent to assist the debtor in evading the creditor and . . . placed the property beyond the creditor's reach." *Deyong,* at 347. The UFTA acknowledges the remedy set forth in *Deyong* and

---

[4]Mr. and Mrs. Chambers did not argue or brief their cross appeal. In *Cranor v. Cooper,* 203 F.2d 833 (9th Cir.), *cert. denied,* 346 U.S. 839, 98 L. Ed. 360, 74 S. Ct. 61 (1953), the court held that if a respondent gives notice of cross appeal, but fails to argue the issues raised by the cross appeal in the appellate brief, it is assumed that the appeal has been abandoned. We therefore deem the cross appeal abandoned.

[5]The judgment and amended judgment entered in the superior court were both in favor of the Sharps, not PHC. As indicated earlier in this opinion, after the lawsuit had been commenced, PHC was liquidated and the lawsuit along with other assets were distributed to the Sharps as shareholders.

[6]The proper reference is RCW 4.28.185(5).

the principles of equity supplement its provisions. RCW 19.40.081(b); RCW 19.40.902. Therefore, under the UFTA and the UFCA, a defrauded creditor is entitled to a money judgment against a transferee if the *Deyong* requirements are met, or equitable principles otherwise compel such relief.

The trial court found that the Chambers children had no actual intent to defraud, hinder or delay the creditors of Mr. and Mrs. Chambers. The Sharps did not assign error to this finding. An unchallenged finding is a verity on appeal. *Metropolitan Park Dist. v. Griffith,* 106 Wn.2d 425, 433, 723 P.2d 1093 (1986). Therefore, even if the transfer were fraudulent, the remedy prayed for by the Sharps is unavailable. It is thus unnecessary for this court to reach a decision as to the Sharps' attorney fees and whether the UFTA should be given retroactive effect.

The Chambers children argue that attorney fees should have been awarded to them pursuant to RCW 4.28.185(5) because the fraudulent conveyance claim against them was dismissed. However, the Chambers children have not cross–appealed and have not assigned error to conclusion of law 15 denying fees or finding of fact 61[7] upon which the denial of fees was based. An unchallenged finding is a verity on appeal. *Metropolitan Park Dist. v. Griffith, supra* at 433.

Even if this court were to consider the contention of the Chambers children, fees under RCW 4.28.185(5) rest within the sound discretion of the trial court. *Chemical*

---

[7] "61. Plaintiffs' fraudulent conveyance or transfer action against the children of Sally B. Chambers was not frivolous and was not brought to harass such Defendants. Such Defendants did not attend the trial in Washington and were deposed in their resident states. Any burdens and inconveniences which the children of Sally B. Chambers would have been [*sic*] avoided had the trial been conducted in their three different resident states were balanced by the conveniences to them resulting from the trial of this action in Washington State where all four children could be represented by a single attorney who was already representing their mother. There was no more convenient forum than Washington. Traditional notions of fair play and substantial justice were not offended by having the children of Sally B. Chambers appear in this state, and no award of attorney's fees is necessary to prevent a violation of traditional notions of fair play and substantial justice."

*Bank v. WPPSS,* 104 Wn.2d 98, 101, 702 P.2d 128 (1985). Finding of fact 61 entered by the trial court was supported by substantial evidence and is sufficient to support the conclusion attorney fees should not be awarded. The trial court did not abuse its discretion in denying attorney fees to the Chambers children.

Affirmed.

GREEN, C.J., and SHIELDS, J., concur.

After modification, further reconsideration denied March 21, 1991.

Review denied at 117 Wn.2d 1005 (1991).