[No. 81311-6.    En Banc.]
Filed June 25, 2009.    Decided October 22, 2009.

CHAD A. THOMPSON ET AL., *Respondents*, v. PAUL V. HANSON ET AL., *Petitioners*.

*Chase C. Alvord* (of *Tousley Brain Stephens PLLC*), for petitioners.

*Douglas R. Cloud* (of *Law Office of Douglas Cloud*), for respondents.

¶1 OWENS, J. — Under Washington's Uniform Fraudulent Transfer Act (UFTA), chapter 19.40 RCW, creditors

have a cause of action against transferees who received fraudulently conveyed property of debtors. We accepted review of the instant case to resolve a split between Divisions One and Three of the Court of Appeals regarding the mental state required to sustain an action against a transferee under the UFTA. Division Three has held that a creditor must demonstrate intent on the part of the transferee. Division One, in accord with most other courts examining the issue, held that the plain language of the statute does not require intentional conduct.

¶2 We hold that the plain language of the UFTA does not require a demonstration of intent to hinder or delay creditors. We affirm the Court of Appeals below and overrule the conflicting prior Division Three case. As applied to the facts of this case, the petitioners, transferees lacking intentional mental state, would still be liable to the respondents for the amount awarded below.

¶3 We also interpret the UFTA's offset provision consistently with the purpose and structure of the statute as a whole and affirm the Court of Appeals, allowing the judgment to stand against Paul and Jeannine Hanson.

## FACTS

¶4 Paul V. Hanson is a home builder operating his business under the name Paul V. Hanson Inc. (PVH). PVH began building homes in a residential development known as "Lakeland Hills" in 1998. Clerk's Papers (CP) at 400. PVH borrowed between $150,000 and $157,200 on each lot, secured by separate deeds of trust. Two years later, PVH had sold three lots but construction financing payment on the unsold lots (66 and 68) was coming due.

¶5 On July 6, 2000, PVH attempted to raise capital by applying for two new loans to be secured by lots 66 and 68. To facilitate this refinancing, PVH conveyed both lots, together valued at $465,000, to the Hansons. The Hansons personally took on a $365,000 financing obligation in order to satisfy PVH's existing debt of $325,000 on the properties.

As a result, the Hansons received approximately $100,000 in equity.

¶6 This controversy began when Chad and Heather Thompson contracted with PVH to build a home on lot 62 in Lakeland Hills. The Thompsons entered into a purchase and sale agreement with PVH and expected to close the sale on July 31, 2000, but the sale failed to close. On May 21, 2001, the Thompsons sued PVH and the Hansons personally for failure to close on lot 62. The Thompsons prevailed at trial, and the court entered judgment for $68,598.60 against PVH.[1]

¶7 As PVH was insolvent at the time of judgment, the Thompsons initiated a second suit against the Hansons personally under the UFTA. The Thompsons complained that by conveying lots 66 and 68 to the Hansons, PVH had executed a constructively fraudulent transfer and it was voidable under the UFTA. The trial court concluded that the transfer was constructively fraudulent under the UFTA and denied subsequent defense motions for reconsideration and offset under RCW 19.40.081(d)(3). Combining the judgment from the prior action with prejudgment interest, the court entered a judgment of $89,129.41 against the Hansons personally.

¶8 The Court of Appeals affirmed, holding that creditors could obtain a judgment against first transferees under the UFTA despite lack of intent to delay or hinder a creditor's attempt to collect. *Thompson v. Hanson*, 142 Wn. App. 53, 63, 174 P.3d 120 (2007). Further, the court rejected the Hansons' request for an offset on the grounds that to do so would be counter to the purpose and structure of the UFTA. *Id.* at 69-70. This court accepted review to consider the following issues. *Thompson v. Hanson*, 164 Wn.2d 1024, 195 P.3d 958 (2008).

---

[1] The court did not enter judgment against the Hansons personally.

## ANALYSIS

### A. *Scope and Standard of Review*

¶9 We accepted review to consider two related questions. First, whether a transferee who accepts a constructively fraudulent transfer is subject to personal liability under the UFTA despite lack of actual intent to hinder or delay any creditor. If so, we must consider whether the trial court erred in declining to offset the Thompsons' damage award by the amount of value the Hansons as transferees provided in the constructively fraudulent transaction.

¶10 Whether intent is required to maintain an action against a transferee under the UFTA is a question of statutory interpretation. Statutory interpretation is a question of law this court reviews de novo. *Philippides v. Bernard*, 151 Wn.2d 376, 383, 88 P.3d 939 (2004). When interpreting the UFTA, this court shall construe its provisions "to effectuate its general purpose" and "to make uniform the law with respect to the subject of this chapter among states enacting it." RCW 19.40.903. Thus, it is appropriate to look not only to decisions by courts of this state, but also to those of other states operating under the UFTA.

### B. *The UFTA*

¶11 Washington's version of the UFTA regulates fraudulent transfers. In general, a fraudulent transfer occurs where one entity transfers an asset to another entity, with the effect of placing the asset out of the reach of a creditor, with either the intent to delay or hinder the creditor or with the effect of insolvency on the part of the transferring entity. In 1987, the legislature adopted the UFTA to replace the older Uniform Fraudulent Conveyance Act (UFCA). LAWS OF 1987, ch. 444. Under the UFTA, a transfer is fraudulent if the debtor acted "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor" or transferred "[w]ithout receiving a reasonably equivalent

value in exchange for the transfer or obligation." RCW 19.40.041(a)(1), (2). In order to provide some measure of protection for such creditors, RCW 19.40.081(b)(1) provides for an action against the first transferee involved in a fraudulent transfer.

### C. *Intent To Hinder or Delay under the UFTA*

¶12 This court must resolve a split among the divisions of the Court of Appeals with regard to the requirement of a transferee's intent to hinder or delay a creditor. Some background as to how the split arose will be helpful in understanding the issue before this court. Unlike the UFTA, the UFCA's remedial provisions did not address the potential for money judgments against transferees. *See* former RCW 19.40.090(1) (1945), *repealed by* LAWS OF 1987, ch. 444, § 15. When Division One of the Court of Appeals addressed the question of whether a transferee of a fraudulent conveyance may be held personally liable to the transferor's creditors, it considered the question one of first impression in this state. *Deyong Mgmt., Ltd. v. Previs*, 47 Wn. App. 341, 346, 735 P.2d 79 (1987).

¶13 The *Deyong* court read into the UFCA an intent requirement that a creditor must satisfy to obtain a judgment against a transferee. *Id.* at 347. Deyong obtained a judgment against Previs prior to Previs's filing bankruptcy. *Id.* at 342. Previs had conveyed both real and personal property to his parents with the purpose of " 'hold[ing] the property safe from [Previs's] creditors.' " *Id.* at 343. Deyong brought an action against Previs's parents as grantees of fraudulent conveyances. *Id.* at 344. The trial court dismissed Deyong's complaint. *Id.* at 345. Using equitable principles to fill the gap in the statute, the Court of Appeals reversed, holding

> that a creditor may recover a money judgment from a transferee of a fraudulent conveyance who has knowingly accepted the property with an intent to assist the debtor in evading the creditor and has placed the property beyond the creditor's reach. Such a transferee is liable for the value of the property conveyed, up to the amount that the debtor owes to the creditor.

*Id.* at 347. The court adopted the reasoning of other state courts interpreting the UFCA as enhancing, rather than superseding, equitable remedies available to creditors. *Id.* at 346 (discussing *Flowers & Sons Dev. Corp. v. Municipal Court*, 86 Cal. App. 3d 818, 825, 150 Cal. Rptr. 555 (1978), and *Damazo v. Wahby*, 269 Md. 252, 256-57, 305 A.2d 138 (1973)).

¶14 After *Deyong*, the legislature adopted the UFTA, which does provide for an action against transferees to a fraudulent conveyance or transfer. RCW 19.40.081 reads in part:

(a) A transfer or obligation is not voidable under RCW 19.40.041(a)(1) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.

(b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under RCW 19.40.071(a)(1), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:

(1) The first transferee of the asset or the person for whose benefit the transfer was made; or

(2) Any subsequent transferee other than a good-faith transferee or obligee who took for value or from any subsequent transferee or obligee.

(c) If the judgment under subsection (b) of this section is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require.

(d) Notwithstanding voidability of a transfer or an obligation under this chapter, a good-faith transferee or obligee is entitled, to the extent of the value given the debtor for the transfer or obligation, to:

(1) A lien on or a right to retain any interest in the asset transferred;

(2) Enforcement of any obligation incurred; or

(3) A reduction in the amount of the liability on the judgment.

The remedial provisions are not silent regarding mental state, as the language regarding good faith in RCW 19.40.081(a) is paired with the value given for any transfer. As RCW 19.40.041(a) indicates, transfers may be fraudulent because of a transferor's intent to delay or hinder or because of lack of reasonably equivalent value received for the transfer. RCW 19.40.041(a)(1), (2). Once the threshold fraudulence has been established, RCW 19.40.081(b)(1) allows for judgment against first transferees. Notably, no mental state language appears in that subsection.

¶15 After the adoption of the UFTA, Division Three examined the mental state requirement again in *Park Hill Corp. v. Sharp*, 60 Wn. App. 283, 803 P.2d 326 (1991). In *Park Hill*, the court considered a creditor's appeal of dismissal for failure to demonstrate intent at trial. *Id.* at 284. The assets at issue constituted scheduled payments for a piece of real property sold by one of the guarantors on a lease in default. *Id.* at 284-85. This guarantor, a Mrs. Chambers, transferred all of her rights to the payments to her four children by unrecorded assignment. *Id.* at 285. The lessor sued, alleging among other claims that the children were liable as transferees to a fraudulent conveyance. *Id.* Division Three affirmed, holding in part that "a defrauded creditor is entitled to a money judgment against a transferee if the *Deyong* requirements are met." *Id.* at 288. The court reasoned that when the legislature adopted the UFTA, it "acknowledge[d] the remedy set forth in *Deyong*," *id.* at 287, but failed to note the exclusion of any mention of intent in the new statute.

¶16 Division Two disagreed with the result in *Park Hill*. *Eagle Pac. Ins. Co. v. Christensen Motor Yacht Corp.*, 85 Wn. App. 695, 705, 934 P.2d 715 (1997), *aff'd*, 135 Wn.2d 894, 959 P.2d 1052 (1998). In *Eagle Pacific*, a struggling yacht building company owed outstanding premiums to its insurer. *Id.* at 698. Through the actions of its principal, the company made several asset transfers between it and other

corporations established to hold off creditors and allay fears of unsatisfied customers. *Id.* at 700. Division Two agreed with the creditor that the plain language of the UFTA does not require a satisfaction of the *Deyong* requirements. *Id.* at 705. However, the court's statement is dicta insofar as the issue of judgment against first transferees was not before the court because preliminary factual issues would need to be decided on remand. *Id.* at 705-06.

¶17 In the Hansons' appeal, Division One also disagreed with the result in *Park Hill. Thompson*, 142 Wn. App. at 63. The court reasoned that *Park Hill* interpreted the UFCA, and the newer UFTA expressly allows for judgment against first transferees irrespective of intent to delay or hinder. *Id.* Moreover, the court cited to the official comment to the UFTA, *id.*, which reads in part, "transfer[s] made ... without adequate consideration [are] constructively fraudulent ... without regard to the actual intent of the parties." UNIF. FRAUDULENT TRANSFER ACT, 7A pt. II U.L.A. prefatory note at 5 (2006).

¶18 Courts of other jurisdictions are in accord with Divisions One and Two's interpretation of the UFTA. *See, e.g., Warfield v. Byron*, 436 F.3d 551, 557-58 (5th Cir. 2006) (interpreting Washington's version of the UFTA and " '*Erie* guess[ing]' " that *Park Hill* was an "outlier" (*Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)); *Scholes v. Lehmann*, 56 F.3d 750, 756-57 (7th Cir. 1995) (interpreting Illinois' version of the UFTA); *In re Agric. Research & Tech. Grp., Inc.*, 916 F.2d 528, 535-36 (9th Cir. 1990); *In re Tiger Petroleum Co.*, 319 B.R. 225, 235-36 (Bankr. N.D. Okla. 2004) (interpreting Oklahoma's version of the UFTA); *In re Jones*, 184 B.R. 377, 388 (Bankr. D.N.M. 1995) (interpreting New Mexico's version of the UFTA); *Hall v. World Sav. & Loan Ass'n*, 189 Ariz. 495, 500-01, 943 P.2d 855 (1997) (interpreting Arizona's version of the UFTA); *Herup v. First Boston Fin., LLC*, 123 Nev. 228, 162 P.3d 870, 875 (2007) (mentioning Washington's version of the UFTA and rejecting the interpretation found in *Park Hill*).

¶19 From a review of the statute's text, structure, history, and interpreting case law, we believe that Divisions One and Two's interpretation is the better view. A plain reading of the remedial provision indicates that creditors may seek relief from first transferees without regard to the transferees' intent. The structure of the statute indicates that while fraudulent transfers may or may not include a culpable mental state, once a transfer has been found to be fraudulent, remedy is available against transferees. The drafters understood this as a change from the UFCA and accepted that some transfers would be constructively fraudulent (without intent) yet could still be remedied by way of a money judgment against first transferees. Finally, courts in other jurisdictions have been uniform in their rejection of an intent requirement.

### D. Whether Transferees Are Entitled to an Offset under RCW 19.40.081(d)

¶20 The Hansons also challenge the method of calculating, and the ensuing amount, of the judgment against them. At trial, the court awarded the Thompsons $89,129.41.[2] The Hansons argue that the number should be reduced by the amount of value they provided to PVH by assuming $365,000.00 of debt on the properties. Such an offset is not provided for in the text of the statute. Moreover, the result would allow for first transferees to take a double offset, counter to the purpose of the UFTA.

■ ¶21 By statute, a creditor may recover judgment from the debtor's transferee. RCW 19.40.071, .081. However, the statute only allows "the creditor [to] recover judgment for the value of the asset transferred, as adjusted under subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less." RCW 19.40.081(b). Subsection (c) allows for adjustment of the value of the asset transferred "as the equities may require."

---

[2] This sum includes the original judgment amount of $68,598.60 and prejudgment interest accumulated during the proceedings below.

RCW 19.40.081(c). The official comments to the UFTA contemplate such an adjustment for a good faith transferee that has enhanced the value of the asset through discharge of liens. UNIF. FRAUDULENT TRANSFER ACT, 7A pt. II U.L.A. § 8 cmt. 3. The statutory provision protecting good faith transferees from outsized judgments operates "[n]otwithstanding voidability of a transfer" and entitles a good faith transferee to "[a] reduction in the amount of the liability on the judgment" up to "the value given the debtor for the transfer or obligation." RCW 19.40.081(d)(3).

¶22 The Hansons argue that the judgment against them should be reduced to zero because subsection (d) allows for an offset in the amount of value given to PVH. The Court of Appeals disagreed, reasoning that the Hansons' interpretation would lead to a double offset contrary to the purpose of the statute, and is inconsistent with the structure of the statute. We affirm the Court of Appeals for the same reasons.

██ ██ ¶23 We construe statutes to effect their purpose and avoid unlikely or absurd results. *State v. Neher*, 112 Wn.2d 347, 351, 771 P.2d 330 (1989). The overriding purpose of the UFTA is to provide relief for creditors whose collection on a debt is frustrated by the actions of a debtor to place the putatively satisfying assets beyond the reach of the creditor. With this purpose in mind, it becomes clear that the Hansons' interpretation of the statute is incorrect.

██ ¶24 What the statute provides for a good faith transferee is "[a] reduction in the amount of the liability on the judgment." RCW 19.40.081(d)(3). A transferee's liability could theoretically be reduced in two ways, and we must determine which, if either, the statute allows. First, it could be reduced by lowering the value of the asset transferred. Because a transferee's liability to a creditor is capped by the value of the asset transferred, RCW 19.40.081(b), a reduction in the value of the asset lowers the total amount a transferee may be required to pay. The second way liability could be reduced is by subtracting the value given the debtor from the lesser of the creditor's claim or the value of

the asset transferred. The Hansons argue that *both* reductions apply. The consideration they gave to PVH was in the form of debt assumption. Since the properties were burdened by debt, the Hansons argue, the value of the asset transferred was lowered by the amount of the debt. Since this value of the asset transferred, the equity of $100,000 as found by the trial court, remains greater than the Thompsons' claim of $89,129.41, the Thompsons' claim is the measure of judgment. The Hansons go on to contend that that same debt satisfaction should again be used to reduce the measure of judgment since it is "value given the debtor." RCW 19.40.081(d). The Hansons cannot have it both ways. This double reduction would be contrary to the overriding purpose of the statute, which is to protect creditors.

¶25 Moreover, the Hansons' interpretation would lead to the strained result that a good faith transferee paying cash would receive less protection than a good faith transferee assuming an equal amount of debt. Under the Hansons' interpretation, for the good faith transferee assuming debt, the value of the asset transferred would be $100,000 (the total value of $465,000 less the debt assumed of $365,000). For the good faith transferee paying $365,000 cash, the value of the asset transferred without debt would be $465,000. Let us assume the creditor's claim, something beyond the control of the transferee, is in the amount of $500,000. For both transferees, the measure of judgment is the value of the asset transferred and, since both are good faith transferees, each would be entitled to an offset in the amount of the value given the debtor. In both cases, that value is $365,000. The debt-assuming good faith transferee now owes nothing to the creditor as its liability is less than zero (the $100,000 asset transferred less the $365,000 value given the debtor), while the cash-paying transferee remains liable to the creditor for $100,000 (the $465,000 asset transferred less the $365,000 value given the debtor). We decline to read the statute in such a strained and arbitrary manner.

¶26 The better reading of the statute is that adopted by the Court of Appeals: RCW 19.40.081(b) limits liability to the value of the property received by the transferee and, for good faith transferees, subsection (d) further limits liability to the *net* value received (i.e., the value of the asset transferred less the value given the debtor). The value given the debtor, including any debt assumed, is deducted from the value of the asset transferred prior to determining the measure of judgment. Subsection (c) is the means by which this occurs, as it allows for the adjustment to the value of the asset transferred. *See* UNIF. FRAUDULENT TRANS-FER ACT, 7A pt. II U.L.A. § 8 cmt. 3. Under this interpretation, a good faith transferee is liable to a debtor's creditors only for the net value (i.e., the total value of the asset less consideration given) while a non-good-faith transferee is liable for the full value of the asset, regardless of consideration given. *Cf. Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995) (discussing Illinois's UFCA and UFTA and stating that if fraudulent intent is proved the transferee must return all value received as opposed to just the amount by which it exceeded consideration given in exchange).

¶27 As our interpretation applies to the present case, the value of the properties transferred was $465,000. Assuming that the Hansons were good faith transferees, they may offset this amount by the value they gave to PVH, which the trial court determined was $365,000. Thus, the value of the asset transferred, which caps the Thompsons' liability, is $100,000. Because the Thompsons' claim of $89,129.41 is less than this amount, the claim is used as the measure of judgment.[3] The trial court correctly determined that the Hansons are liable for this amount, and we therefore affirm the Court of Appeals.

---

[3] The result is the same if the Hansons were not good faith transferees as, without any offset, the value of the asset remains $465,000. The Thompsons' claim is still less than this amount and would therefore still be used as the measure of judgment.

## CONCLUSION

¶28 We affirm the Court of Appeals with regard to both issues. The intent requirement read into the UFCA by the *Deyong* court expired with the statute. Division Three's holding in *Park Hill* does not comport with the text, structure, or case law interpreting the UFTA. The offset provision does not allow for a good faith transferee to escape completely from judgments against him under RCW 19-.40.081(b)(1) and should not be interpreted to undermine the purpose of the statute.

ALEXANDER, C.J., and C. JOHNSON, SANDERS, CHAMBERS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.

¶29 MADSEN, J. (concurring) — Although I agree with much of the majority, I concur because I would not reach the question of offset under RCW 19.40.081(d). Only good faith transferees are entitled to an offset under subsection (d)(3), which provides for a "reduction in the amount of the liability on the judgment [to the extent of the value given the debtor for the transfer or obligation]." Since the trial court did not make a finding that the Hansons were good faith transferees, they are not entitled to an offset.

¶30 My concern is that the majority admits the statute supports the reading proposed by the Hansons but declines to apply the statute as written because, it says, following the statute would lead to an absurd result. It says that the literal application of the statute would leave creditors with no relief against good faith transferees. But, the majority's reading punishes good faith transferees, a result I do not believe was intended by the legislature. Indeed, that is the reason the offset provision is triggered only by a good faith transferee. In any event, in the absence of a finding that the Hansons were good faith transferees, the court need not

decide what the legislature intended by the offset provision and I would not do so.

Reconsideration denied March 29, 2010.