2014 NOV 24 AM 9: 27



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | ) |
| | ) No. 71053-2-I |
| BRITTANY FROMBACH, | ) |
| | ) DIVISION ONE |
| Appellant, | ) |
| | ) UNPUBLISHED OPINION |
| and | ) |
| | ) |
| DYLAN FROMBACH, | ) |
| | ) FILED: November 24, 2014 |
| Respondent. | ) |
| | ) |

LEACH, J. —Brittany Frombach appeals pro se from the entry of final orders dissolving her marriage and providing for the care of her two daughters. She contends that the court erred in admitting testimony at trial, placed undue weight on certain evidence, and found, contrary to the evidence, that the father had been the primary caretaker of the children before the parties separated. Because Brittany fails to demonstrate any legal error or abuse of discretion in the orders on review, we affirm.[1]

## FACTS

Brittany Frombach (now Wagner) and Dylan Frombach married in 2002. During their marriage, they had two daughters and lived in Federal Way. Brittany filed a petition for dissolution in April 2012 following an argument that escalated

---

[1] For clarity, we refer to the parties by their first names.

into a physical confrontation and culminated in Brittany's arrest for simple assault.[2]

The trial court entered temporary orders providing for equal residential time with each parent. Shortly before trial, Brittany filed notice of intent to relocate to Maple Valley. The parties' daughters were 10 and 8 years old at the time of trial, and the children's residential schedule was the primary contested issue. Dylan argued that the children should live with him in the family home in Federal Way the majority of the time. Brittany, on the other hand, urged the court to allow her to relocate and have the children reside primarily with her and her mother in Maple Valley.

During the three-day trial in July 2013, the court heard the testimony of the parties, various family members, friends, and acquaintances. A Family Court Services social worker who conducted an evaluation testified about her recommendations for a parenting plan. The court also considered the testimony of Dylan's counselor and a psychotherapist who had several therapy sessions with the parties' daughters.

The court entered a final parenting plan providing for the children to live with Dylan in Federal Way the majority of the time. The court allowed Brittany to

_____

[2] Brittany was charged with fourth degree assault and exposing children to domestic violence. The State agreed to dismiss the latter charge with prejudice, and the assault charge was resolved by a stipulated order requiring Brittany to comply with certain conditions.

relocate, and the parenting plan allows for the children to reside with her overnight every Thursday and, on alternate weeks, from Thursday afternoon until Monday morning. The plan also allocates major decision-making authority to Dylan, except with respect to religious issues. Brittany appeals.

ANALYSIS

We review a trial court's parenting plan for abuse of discretion.[3] We defer to the trial court because of its unique opportunity to observe the parties, determine their credibility, and sort out conflicting evidence.[4] A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.[5]

Brittany claims that the trial court erred in admitting the testimony of Nancy Paul, who testified about seven therapy sessions she conducted with the parties' daughters in late 2012 and early 2013. But it does not appear that Brittany objected or moved to exclude Paul's testimony at trial. Consequently, Brittany has not preserved this claim of error for review.[6]

Moreover, Brittany has not identified any valid legal basis to exclude Paul's testimony. She asserts that Paul was biased in favor of Dylan and claims

---

[3] In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012), cert. denied, 133 S. Ct. 889 (2013).
[4] In re Marriage of Woffinden, 33 Wn. App. 326, 330, 654 P.2d 1219 (1982).
[5] Katare, 175 Wn.2d at 35.
[6] See RAP 2.5(a) (failure to timely object waives nonconstitutional errors).

the evidence was "unfair" to her. Brittany cites two cases to support her claim, an unpublished decision of Division Two of this court and an Illinois appellate court decision. We do not consider unpublished decisions of this court.[7] The Illinois case involves a trial court's exclusion of certain portions of a therapist's testimony based on an erroneous interpretation of parental consent provisions of an Illinois statute.[8] That case has no application to this one.

Brittany bases her objections to the testimony upon two circumstances: (1) the fact that she was not informed and did not consent to her daughters' participation in the therapy and (2) Dylan's presence during the counseling. However, these issues go to the weight and credibility of the evidence, not its admissibility. And Brittany's trial counsel emphasized these facts in arguing that the father's decision to enroll the children in counseling without consulting the mother not only violated the court's temporary orders but also demonstrated poor judgment and willingness to involve the children in the conflict. Counsel also argued that Dylan's presence during the sessions severely undermined the value of any statements made by the children to Paul. Brittany fails to demonstrate

---

[7] GR 14.1(a).
[8] See In re Marriage of Kerman, 253 Ill. App. 3d 492, 624 N.E.2d 870, 191 Ill. Dec. 682 (1993).

that the trial court abused its discretion in any manner with respect to the evidence.[9]

In a similar vein, Brittany challenges the trial court's reliance upon the recommendations of the social worker, Emily Brewer. Brittany argues that Brewer's contact with Paul and reliance on Paul's opinions, which were biased in favor of Dylan, tainted Brewer's recommendations to the court. But this court does not retry the facts on appeal. "An appellate court may not substitute its evaluation of the evidence for that made by the trier of fact."[10] The trier of fact resolves conflicting testimony and evaluates the evidence and credibility of the witnesses.[11]

In any event, the social worker's recommendations do not appear unfavorable to Brittany. Brewer concluded that no basis existed for domestic violence restrictions, in spite of Dylan's allegations and Brittany's arrest. She also rejected Dylan's position that he was more closely bonded to the children and concluded that both parents were equally connected to them and that both parents had been primary caregivers. Brewer recommended a residential schedule that provided for approximately equal residential time with each parent

---

[9] City of Spokane v. Neff, 152 Wn.2d 85, 91, 93 P.3d 158 (2004) (trial court's evidentiary rulings are reviewed for an abuse of discretion).

[10] Goodman v. Boeing Co., 75 Wn. App. 60, 82-83, 877 P.2d 703 (1994), aff'd, 127 Wn.2d 401, 899 P.2d 1265 (1995).

[11] Thompson v. Hanson, 142 Wn. App. 53, 60, 174 P.3d 120 (2007), aff'd, 168 Wn.2d 738, 239 P.3d 537 (2009).

and joint decision making for major decisions. Brittany fails to show how these recommendations reflect negative "preconceived notions" about her. In addition, the particular provisions of the final parenting plan that Brittany challenges do not, in fact, coincide with the social worker's recommendations. Therefore, the record does not support Brittany's argument that Brewer's recommendations unduly influenced the court.

Brittany recites evidence in the record supporting her position that even when she worked full time and Dylan did not work, she performed the majority of caretaking functions. She argues that, in the absence of evidence, the court found otherwise. But, as explained, this court does not resolve conflicts in the testimony. And perhaps more importantly, Brittany fails to identify any finding made by the court identifying Dylan as the primary caretaker of the children.

Although she does not cite the pertinent Washington statute and relies upon statutory factors that apply in other jurisdictions, Brittany claims, in essence, that the court imposed a parenting plan that is not in the best interests of the children. She claims that the court failed to consider her role as the primary caretaker, her relocation to a better school district, and Dylan's lack of support for her relationship with the children.

RCW 26.09.187 sets forth the criteria for establishing a permanent parenting plan. The court must consider the following seven factors:

(i) The relative strength, nature, and stability of the child's relationship with each parent;

(ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;

(iii) Each parent's past and potential for future performance of parenting functions as defined in RCW 26.09.004(3), including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;

(iv) The emotional needs and developmental level of the child;

(v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;

(vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and

(vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.[12]

Brittany relies on her subjective interpretation of conflicting evidence to support her claim that the facts support only a parenting plan where the children reside primarily with her in Maple Valley. The court was entitled to rely on evidence indicating that Dylan has an equally strong relationship with the children and that both parties were involved in the day-to-day caretaking. RCW 26.09.187 does not require that the court compare school districts. On the other hand, this statute does require the court to consider the children's ties and

---

[12] RCW 26.09.187(3)(a).

involvement in their community and school. This factor weighed in favor of a plan providing continuity by allowing the children to maintain many of their routines and attend the same school in Federal Way.[13]

Brittany argues that the court's failure to provide for joint decision making is "not only unfair but cruel." She asserts that it is better for "both parents to debate and discuss major decisions." While perhaps true as a general proposition, the record amply demonstrates the parties' inability or unwillingness to get along to the extent necessary to make appropriate decisions together in their children's best interests.

Finally, Brittany claims the record establishes sufficient grounds to justify modifying the existing residential schedule. But Brittany has not sought modification of the parenting plan under RCW 26.09.270 or alleged any substantial change in circumstances to support such a request.

Affirmed.

_Leach, J._

WE CONCUR:

_Dwyer, J._     _Becker, J._

---

[13] See RCW 26.09.187(3)(a)(v).