# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of )  No. 75518-8-I
)
DENISE M. BARRY, )
)
             Respondent, )  DIVISION ONE
)
           and )
)
WILLIAM C. PARSONS, )  UNPUBLISHED OPINION
)
            Appellant. )
)  FILED: November 13, 2017

MANN, J. — William Parsons appeals from the trial court's modification of the parenting plan for his daughter. Because the trial court did not exceed its statutory authority under RCW 26.09.260, and did not abuse its discretion under RCW 26.09.230(4) and RCW 26.09.191, we affirm.

## FACTS

Denise Barry and William Parsons were married in 2005. Their daughter, Greta, was born later in that same year. In 2008, the marriage was dissolved, and in 2011, they agreed on a formalized parenting plan that allocated 50/50 residential time with each parent, and joint decision-making authority. At the time of the modification, the residential plan had Greta residing with one parent Monday and Tuesday, and the other

on Wednesday and Thursday, with alternating weekends starting after school Friday until school on Monday.

Parsons and Barry have frequently disagreed on issues such as the schools and daycares Greta will attend, her extracurricular activities, her use of a therapist, her diet, and payment for various activities. Parsons' unpunctuality and lack of responsibility has caused considerable discord. Greta's school records demonstrate that she was marked as "unexcused late" or "unexcused absent" on a significant number of days that she was residing with Parsons. Parsons was repeatedly late to pick up Greta from daycare, and other set exchange points, sometimes not showing up at all. Parsons also neglected to bring Greta to extracurricular activities, and at least once failed to bring Greta to her prescheduled therapy appointment. Parsons also did not provide basic necessities for Greta while she was residing in his home, causing Greta to have to bring her own toiletries and clothing from Barry's house.

Another source of contention was Barry's involvement of the police in her interactions with Parsons. In March 2013, Barry suspected Parsons was driving without a license. Barry called the police to have them go to Greta's school, where Parsons was coaching the chess club with Greta, to determine if Parsons' license was valid. This was done in front of the school staff as well as the other students and parents at the school.

Greta has had some behavioral issues at school and some bed wetting incidents at Parsons, causing the parents to seek out a therapist. Parsons agreed that therapy was a good decision, but has chosen not to participate in her therapy, and has not contributed to payment. Parsons has also stopped paying child support on time,

resulting in him being found in contempt for failure to pay. At one point, Parsons brought the child support up with Greta, saying the reason they couldn't go on vacation was because of the child support payments.

Greta only has one year left at her current school and the parties disagree on which school to send her to next year. Parsons sought to have Greta transfer schools before the next year, and recently enrolled Greta in a different school near his home, and changed her home address to his on the school records, both contrary to court orders.

Greta is currently the negotiator between her two parents, who have a hard time talking to each other. Greta told her therapist that she feels used by her father as "the messenger" with her mother.

On May 12, 2015, Parsons filed a motion for "Modification/Adjustment of Custody Decree/Parenting Plan/Residential Schedule." Parsons argued the parenting plan should be modified and requested a reduction in child support. Parsons argued a substantial change had occurred and that a modification of the parenting plan was in the best interest of the child on the grounds that "the child's environment under the parenting plan is detrimental to the child's physical, mental or emotional health and the harm likely to be caused by a change in environment is outweighed by the advantage of a change to the child." Parson also cited "[t]he abusive use of conflict by the mother which creates the danger of serious damage to the child's psychological development" as the basis for the change. Parsons originally sought to return to daily exchanges.

Shortly after Parsons filed his motion, an incident occurred that Barry calls the "domestic violence incident." The facts of this incident are sharply contested by the

parties. Both parties agree that Parsons "barked" at Greta, causing her to get upset. Parsons then went to take a shower and Greta called her mother because she was upset and said Parsons told her he would not make her dinner. Barry and Stephen French, Barry's fiancé who lives with Barry, went over to Parsons' house to talk to Greta. When Barry and French arrived, Parsons reluctantly allowed Greta to follow Barry across the street to talk. Parsons stated he moved to get Greta, but French held his hand in front of Parsons' face and told him to let them talk. In response, Parsons went inside and called the police.

The parties eventually gathered on the porch, with Parsons telling Barry and French to leave and telling Greta to get back inside. Parsons then grabbed Greta's shoulder and Barry moved to intervene. Parsons stated that Barry, who was on crutches for a preexisting ankle injury, lost her balance and fell. Greta, French, and Barry stated that Parsons had shoved Barry, causing her to fall back. French then moved to remove Parsons' hand from Greta, causing Parsons to let go and Greta to fall backward into either the railing or some boxes and sustain several bruises. Greta began to cry, ran down the stairs, and hid behind a tree. French accused Parsons of pushing Barry and called the police.

When the police arrived, Greta was sent home with Barry, and Parsons was arrested. Parsons stayed in jail for two days, and was brought into the child support hearing in handcuffs and a jail jumpsuit.

Barry filed a timely response to Parsons' motion for modification. Barry's response agreed that adequate cause existed for a modification hearing, and included her own counter-request for a modification of the parenting plan and her own proposed

-4-

parenting plan. Barry also asked that Parsons' visitation be limited under RCW 26.09.191(3)) based on a history of domestic violence and abusive use of conflict. Finally, Barry asked that "the joint decision making provision of the parenting plan should be modified to giving mother sole decision making."

At the modification hearing, the trial court denied Barry's domestic violence protection order. The court did find adequate cause for modification of the parenting plan and affirmed the reduction in child support. The court entered a temporary parenting plan, which reinstated the 50/50 residential schedule, two days with Barry and two days with Parsons with alternating weekends. The final parenting plan was reserved for determination after trial. The court also assigned a parenting evaluator, Caroline Davis.

At the trial for the final modification hearing, the trial court heard testimony from Barry and Parsons, as well as Greta's teacher Gwendolyn Reilly, her daycare provider Alexandra Graeve, and Parsons' roommate Tim White. Davis also testified and provided her recommendation.

Davis' report described the history of litigation and interviews she conducted with Parsons, Barry, Greta, and French, as well as teachers, and counselors. Davis noted that each parent had issues that they needed to work on, specifically noting that Parsons does not have "any sense of how concerning his behavior can be to" Greta, and that his "need to be right can become more important than what Greta needs." She also noted that Parsons needs to be more willing to work with Greta's therapist. Davis also noted that Barry needs to meet with the nutritionist recommended by Greta's

doctor. Finally, Davis reiterated that both parents need to keep Greta out of their conflict.

In the end, Davis determined Barry and Parsons are unable to co-parent, however, she still recommended a 50/50 residential schedule, joint decision-making, and suggested parallel parenting instead of co-parenting, where Greta would reside with each parent for a week at a time. Davis informed the court that she believed both parties were at fault for the conflict, and that she believed having one exchange per week would decrease the conflict and create a more stable environment for Greta, while still allowing her equal time with both parents.

Final orders were entered on June 23, 2016. The trial court held "the parenting plan should be modified because a substantial change of circumstances has occurred in the circumstances of the child or the nonmoving party and the modification is in the best interests of the child and is necessary to serve the best interests of the child." This ruling was based on the fact "the parties agree that the current parenting plan should be modified."

In support of the modification, the trial court entered the following findings documenting facts that had arisen since adoption of the parenting plan, or that were unknown to the court at the time the parenting plan was adopted:

> The child is negatively impacted by a pattern of conduct established by the Father of instability, repeated failure to follow court orders, including being at exchanges late and in the wrong location, getting the child to school late on a regular basis which negatively impacted her education, making negative statements to the child about the mother, placing the child in the middle of conflict, failing to recognize the impact of his behavior, particularly his anger, on the child and others, scheduling the child with activities on the Mother's time without consulting the Mother first, scheduling the child for extracurricular activities without first

communicating with the Mother, failing to take the child to agreed activities when they fall on his residential time, failing to pick up the child from day care on a regular basis, acting with hostility toward the Mother in the child's presence, failing to provide the child with basic hygienic toiletries, clothing and other basic needs while in his home; expecting that the Mother will provide for the child's basic needs while in his home (e.g. providing clothing, toiletries to travel back and forth) even when he had 50% residential time.

The court further found that this evidence demonstrated that "the Custody Decree/Parenting Plan/Residential Schedule should be modified because the reduction or restriction of the residential time for the person with whom the child does not reside a majority of the time would serve and protect the best interests of the child using the criteria in RCW 26.09.191." Finally, the trial court entered additional findings in support of the modification, holding;

> In addition, the parties have a documented history of conflict, including multiple contempt orders against the Father, an order allowing the Mother make up residential time based on the Father's lateness, the documented history of lateness, evidence that the Father has failed to follow multiple court orders, including an order that prohibited him from changing the child's address to his for school purposes. The evidence supported that the Mother made efforts to keep the Father informed, but the Father failed to inform the Mother of decisions until after he had involved the child and third parties.

The final parenting plan restricted Greta's residential time with Parsons pursuant to RCW 26.06.191 and made Barry solely responsible for making major decisions regarding Greta. The trial court disagreed with the recommendation of the parenting evaluator and essentially adopted Barry's proposed parenting plan. The new parenting plan decreased Greta's residential time with Parsons to bi-weekly weekends, alternating holidays, and specific time set aside during school breaks. Parsons appeals.

## ANALYSIS

### Authority to Modify the Parenting Plan

Parsons argues first that the trial court lacked authority to modify the parenting plan because he, not Barry, filed the motion for modification. We disagree.

A trial court's authority to modify a parenting plan is strictly controlled by statute. RCW 26.09.260 provides several grounds on which a trial court may order such a modification. RCW 26.09.260(1) authorizes a trial court to order major modifications to a parenting plan when a substantial change has occurred in the circumstances of either the child or the nonmoving party. The modification must also be in, and necessary to serve, the child's best interests. RCW 26.09.260(1). The court may order modifications to the residential schedule when it finds one of the circumstances in RCW 26.09.260(2) present. These include when "[t]he parents agree to the modification" and when "[t]he child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by the change of environment is outweighed by the advantage of a change to the child." RCW 26.09.260(2)(a), (c).

A party seeking a "modification of a custody decree or parenting plan shall submit together with his or her motion, an affidavit setting forth facts supporting the requested order or modification and shall give notice, together with a copy of his or her affidavit, to other parties to the proceedings, who may file opposing affidavits." The trial court must "deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits." RCW 26.09.270. "In proceedings for a modification of custody or a parenting plan, a proposed parenting plan shall be filed and served with

-8-

the motion for modification <u>and with the response to the motion for modification</u>." RCW 26.09.181(1)(b) (emphasis added).

Parsons argues, relying on <u>In re Marriage of Shryock</u>, 76 Wn. App. 848, 852, 888 P.2d 750 (1995), that the trial court effectively denied his motion for a modification, and was thus required to revert to the existing parenting plan. In <u>Shryock</u>, the father filed a motion for modification based on the grounds that his son had "been integrated into the family of the petitioner with the consent of the other parent in substantial deviation from the parenting plan." RCW 26.09.260(2)(b). The mother filed a response, arguing that the son had not been "integrated into" the father's family, and provided her own proposed parenting plan. The trial court specifically found the parenting plan "should not be modified" because none of the statutory reasons for modification set forth in RCW 26.09.260 applied in the case. But rather than reinstate the original parenting plan, the court adopted most of the changes the mother requested. <u>Shryock</u>, 76 Wn. App. at 850. The appellate court reversed, holding the court lacked the statutory authority to modify the parenting plan after it determined that none of the statutory reasons to modify under RCW 26.09.260 applied. <u>Shryock</u>, 76 Wn. App. at 851-52.

In this case, Parsons petitioned for modification. Parsons specifically argued the parenting plan should be modified "because a substantial change of circumstances has occurred in the circumstances of the child or the other party and the modification is in the best interests of the child and is necessary to serve the best interests of the child." The substantial change being that "[t]he child's environment under the parenting plan is detrimental to the child's physical, mental or emotional health." Barry responded by

stipulating that adequate cause for modification existed and included a counter-request for modification of the parenting plan and residential schedule.

Here, unlike Shryock, the trial court found that there were statutory reasons for modification under RCW 26.09.260. The court specifically found that a substantial change in circumstances had occurred under RCW 26.09.260(1), and that the parties agreed to a modification under RCW 26.09.260(2). The trial court also determined that a modification was necessary under RCW 26.09.260(4). Thus, the trial court had the necessary statutory authority to modify the parenting plan.[1]

Parsons relies also on Matter of Marriage of Leslie, 112 Wn.2d 612, 621, 772 P.2d 1013 (1989). In Leslie, our Supreme Court held "a court has no jurisdiction to grant relief beyond that sought in the complaint. To grant such relief without notice and an opportunity to be heard denies procedural due process." Leslie, 112 Wn.2d at 617. In this case, however, Parsons had plenty of notice that Barry was seeking a modification in the parenting plan and was provided substantial opportunity to be heard on the issue throughout the litigation below.

Parsons essentially argues that the trial court exceeded its authority because it determined that the parenting plan proposed by Barry, rather than the one proposed by Parsons, was in the best interest of the child. But the legislature expressly requires the nonmoving party to submit a responding parenting plan. RCW 26.09.270. Once a basis for modification has been established, the trial court is then to consider the

---

[1] In Parsons' reply brief he argues that the trial court erred in holding the parties "agreed to the modification." "An issue raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Although there is a question whether RCW 26.09.260(2)(1) was intended to require an agreement to the particular modification, or an agreement to modify the parenting plan, the record in this case demonstrates both parties agreed the current parenting plan needed to be modified.

evidence before it and make any modifications to the parenting plan based solely on what is in the best interests of the child, which could mean granting the relief requested by the nonmoving parent. RCW 26.09.260(1); In re Marriage of Coy, 160 Wn. App. 797, 804, 248 P.3d 1101 (2011).

*Abuse of Discretion*

Parsons next argues the trial court abused its discretion in adopting Barry's parenting plan, which substantially reduced the time Greta would reside with Parsons and granted Barry sole decision-making authority.[2] We disagree.

We review a trial court's rulings with respect to a parenting plan for abuse of discretion. In re Marriage of Littlefield, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Littlefield, 133 Wn.2d at 46-47. The trial court's findings of fact are treated as verities on appeal, so long as they are supported by substantial evidence. In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted." Chandola, 180 Wn.2d at 642.

---

[2] Parsons also argues the trial court erred in finding a substantial change in circumstances, however Parsons specifically argued at trial and in his affidavit that a substantial change had occurred. Barry stipulated to the finding of adequate cause for a modification hearing. The parties may stipulate to, or waive, the necessary showing of a substantial change of circumstances. "The primary purpose of the threshold adequate cause requirement is to prevent movants from harassing nonmovants by obtaining a useless hearing." In re Marriage of Adler, 131 Wn. App. 717, 724, 129 P.3d 293 (2006). "If the party protected by the threshold requirement freely stipulates to adequate cause, this concern is not present. The parents may waive the threshold determination." Adler, 131 Wn. App. at 724. See also In re Marriage of Naval, 43 Wn. App. 839, 845, 719 P.2d 1349 (1986). Parsons also only provides passing argument that a substantial change had not occurred, and "[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996).

There is a strong presumption against modifying parenting plans because changes in residential schedules are highly disruptive to children. In re Parentage of Schroeder, 106 Wn. App. 343, 350, 22 P.3d 1280 (2001). Nonetheless, trial courts are given broad discretion in matters dealing with the welfare of children. In re Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993).

Under RCW 26.09.260(4), "The court may reduce or restrict contact between the child and the parent with whom the child does not reside a majority of the time if it finds that the reduction or restriction would serve and protect the best interests of the child using the criteria in RCW 26.09.191." RCW 26.09.191(3) provides "[a] parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provisions of the parenting plan," if any one of four factors exist. In this case, the trial court specifically cited "[t]he abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development."

There was substantial evidence to demonstrate the current parenting plan was having an adverse effect on Greta and both parties requested a change. Both parties presented evidence of conflict, assigning blame to the other parent. By the end of trial, Parsons' adopted Davis' proposed plan to have Greta reside at each parents' house for a week at a time. Based on the evidence, the trial court determined that living with Parsons for an entire week was not in Greta's best interest.

The trial court entered multiple findings in support of its decision, including that the child was "negatively impacted by a pattern of conduct established by the Father of instability, repeated failure to follow court orders, including being at exchanges late and

-12-

in the wrong location, getting the child to school late on a regular basis which negatively impacted her education, making negative statements to the child about the mother, placing the child in the middle of conflict, failing to recognize the impact of his behavior, particularly his anger, . . . failing to pick up the child from day care on a regular basis, acting with hostility toward the Mother in the child's presence." The trial court also considered that Parsons did not provide Greta with "basic hygienic toiletries, clothing and other basic needs while in his home."

Parsons does not dispute the trial courts findings and we find that they are supported by substantial evidence on the record. Parsons' main argument is that the evidence showed Barry had also placed Greta in the middle of her conflict with Parsons. This argument, however, does not go to the issue of whether the trial court erred in finding Parsons' abusive use of conflict. We defer "to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence and credibility of the witnesses." Thompson v. Hanson, 142 Wn. App. 53, 60, 174 P.3d 120 (2007), aff'd, 168 Wn.2d 738, 239 P.3d 537 (2009). "A reviewing court will not substitute its judgment for that of the trial court even though it may have resolved a factual dispute differently." Sunnyside Valley Irr. Dist. v. Dickie, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003). The trial court did not abuse its discretion in modifying the parenting plan to limit Parsons' residential time.

Parsons next argues the trial court erred in granting Barry sole decision-making authority. Under RCW 26.06.260(10), "The court may order adjustments to any of the nonresidential aspects of a parenting plan upon a showing of a substantial change of circumstances of either parent or of a child, and the adjustment is in the best interest of

the child." The trial court considered evidence presented at trial the showed how Parsons would act unilaterally, without informing Barry "of decisions until after he had involved the child and third parties." Including the most recent occurrence when Parsons registered Greta for a new school, contrary to a court order, and without informing Barry. Whereas, the evidence supported a finding that Barry made efforts to keep Parsons informed, and was more involved in the decision-making process. We hold the trial court did not err in granting Barry sole decision-making authority for important decisions regarding Greta.

## Attorney Fees

Barry requests fees under RAP 18.1 and 18.9 claiming that Parson violated the rules of appellate procedure. RAP 18.9 authorizes an award of terms or compensatory damages against a party who "uses these rules for the purposes of delay, files a frivolous appeal, or fails to comply with these rules." Delany v. Canning, 84 Wn. App. 498, 509, 929 P.2d 475 (1997). Parsons procedural errors were not so egregious as to affect our ability to consider this case on the merits. Moreover, although we rejected Parsons' claims, we cannot say they were frivolous. We deny Barry's request for fees.

We affirm.

_____
Mann, J.

WE CONCUR:

_____          _____

-14-