174 P.3d 120 (2007)
Heather and Chad THOMPSON, Respondents,
v.
Paul and Jeannine HANSON, Appellants.
No. 58577-1-I.
Court of Appeals of Washington, Division 1.
December 3, 2007.
*122 Douglas Richard Cloud, Law Office of Douglas Cloud, Tacoma, WA, for Respondents.
Chase Christian Alvord, Toby James Marshall, Tousley Brain Stephens PLLC, Seattle, WA, Paul V. Hanson (Appearing Pro Se), Jeannine Hanson (Appearing Pro Se), Kirkland, WA, for Appellants.

PUBLISHED OPINION
SCHINDLER, A.C.J.
¶ 1 Paul and Jeannine Hanson (the Hansons) appeal the trial court's determination that they are personally liable for the judgment Heather and Chad Thompson (the Thompsons) obtained against the Hansons' construction company, Paul V. Hanson, Inc. (PVH). Before the Thompsons filed their breach of contract lawsuit against PVH, PVH transferred property it owned to the Hansons. After obtaining a judgment against PVH for breach of the purchase and sale agreement, the Thompsons sued the Hansons under the Uniform Fraudulent Transfer Act, chapter 19.40 RCW (UFTA), for the value of the property that was transferred. Following trial, the court ruled the Thompsons proved constructive fraud and that Paul and Jeannine Hanson were liable for the judgment against PVH to the extent of the equity they received from the transfer. We affirm the trial court's decision and the judgment against Paul and Jeannine Hanson.

FACTS
¶ 2 Paul Hanson is the sole shareholder and president of a construction company, Paul V. Hanson, Inc. (PVH). In March 1999, Heather and Chad Thompson entered into a purchase and sale agreement with PVH and agreed to provide a construction retainer of $10,000 to build a house on a lot PVH had an option to buy, Lot 62. On June 5, 2000, after multiple addenda to the purchase and sale agreement and a number of other delays, the parties agreed to a purchase price of $208,490. On July 31, 2000, the Thompsons signed the closing documents to buy the house. PVH refused to sign the closing documents and demanded additional compensation.
¶ 3 On September 13, 2000, PVH transferred Lots 66 and 68 to Paul Hanson and his spouse Jeannine to facilitate obtaining refinancing construction loans for the two lots. In exchange for the transfer, the Hansons assumed $325,000 in construction loan debt on the two lots. In October 2000, PVH sold the home it built for the Thompsons on Lot 62 to another buyer for $235,500.
¶ 4 In May 2001, the Thompsons sued PVH and the Hansons for breach of the purchase and sale agreement. At the conclusion of trial, the court found PVH breached the purchase and sale agreement by refusing to sign the closing documents on July 31, 2000. The court entered judgment against PVH for the construction retainer and breach of contract damages. With prejudgment *123 interest and attorney fees, the judgment against PVH was $68,598.60.[1]
¶ 5 In March 2004, the Thompsons sued the Hansons individually and on behalf of their marital community under the Uniform Fraudulent Transfer Act, chapter 19.40 RCW (UFTA). The Thompsons sought a declaratory judgment allowing attachment and foreclosure against the two lots, or, in the alternative, a judgment against the Hansons for the value of the two lots PVH transferred to them.
¶ 6 At trial, the Hansons stipulated that the lots PVH transferred to them, Lots 66 and 68, were worth $465,000 and that the Hansons assumed $325,000 in debt. The court ruled the Thompsons did not carry their burden of proving actual intent to defraud under the UFTA. But based on the evidence that PVH did not receive reasonably equivalent value for Lots 66 and 68, and that the company's remaining assets were unreasonably small in relation to the business, the court concluded the Hansons were liable for constructive fraud under the UFTA to the extent of the $100,000 in equity that they received. The court entered judgment against the Hansons for $89,129.41, the outstanding amount PVH owed the Thompsons. The Hansons appeal.

ANALYSIS
¶ 7 The Hansons contend the trial court erred in entering judgment against them under the UFTA because (1) the Thompsons did not prove intent to defraud; (2) the court improperly admitted evidence related to the remaining assets of PVH after the transfer; (3) the Thompsons did not establish that PVH did not receive reasonably equivalent value in exchange for the transfer and that the company's remaining unencumbered assets were unreasonably small in relation to the business; (4) the Hansons were entitled to an offset against the judgment; and (5) the court impermissibly shifted the burden of proof and required the Hansons to justify the transfers.
Standard of Review
¶ 8 This court reviews the trial court's decision following a bench trial to determine whether the findings are supported by substantial evidence and whether those findings support the conclusions of law. Dorsey v. King County, 51 Wash.App. 664, 668-69, 754 P.2d 1255 (1988). Substantial evidence is a quantum of evidence sufficient to persuade a rational fair-minded person that the premise is true. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 176, 4 P.3d 123 (2000). An appellate court defers to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence and credibility of the witnesses. Burnside v. Simpson Paper Co., 123 Wash.2d 93, 108, 864 P.2d 937 (1994); Boeing Co. v. Heidy, 147 Wash.2d 78, 87, 51 P.3d 793 (2002). In determining the sufficiency of evidence, an appellate court need only consider evidence favorable to the prevailing party. Bland v. Mentor, 63 Wash.2d 150, 155, 385 P.2d 727 (1963). Questions of law are reviewed de novo. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wash.2d 873, 879-880, 73 P.3d 369 (2003). Statutory interpretation is a question of law. Western Telepage, Inc. v. City of Tacoma, 140 Wash.2d 599, 607, 998 P.2d 884 (2000). "The primary goal of statutory construction is to carry out legislative intent." Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 807, 16 P.3d 583 (2001). Legislative intent is determined primarily from the statutory language, viewed "in the context of the overall legislative scheme." Collection Servs. v. McConnachie, 106 Wash. App. 738, 741, 24 P.3d 1112 (2001). Unambiguous statutory language is accorded its plain meaning. Davis v. Dep't of Licensing, 137 Wash.2d 957, 964, 977 P.2d 554 (1999). Each provision of a statute should also be read together with other provisions to achieve a harmonious and unified statutory scheme. In re Estate of Kerr, 134 Wash.2d 328, 336, 949 P.2d 810 (1998). "[T]he legislature is presumed to know the existing state of the case law in those areas in which it is *124 legislating." Woodson v. State, 95 Wash.2d 257, 262, 623 P.2d 683 (1980). A court should avoid an absurd result when interpreting statutes. See Cherry v. Municipality of Metropolitan Seattle, 116 Wash.2d 794, 802, 808 P.2d 746 (1991).
Constructive Fraud
¶ 9 Relying on Deyong Management, Ltd. v. Previs, 47 Wash.App. 341, 735 P.2d 79 (1987), and Park Hill Corp. v. Sharp, 60 Wash.App. 283, 803 P.2d 326 (1991), the Hansons contend that the trial court erred in concluding they were personally liable under the UFTA. The court found that the Thompsons did not prove "[a]ctual intent to defraud . . . by clear and satisfactory proof[,]" under the UFTA. But based on the determination that the Thompsons proved the transfer of Lots 66 and 68 was constructive fraud, the court concluded the Thompsons were entitled to judgment against the Hansons under RCW 19.40.081 to the extent of the $100,000 in equity that they received from the transfer.
¶ 10 In 1987, the legislature repealed the Uniform Fraudulent Conveyances Act (UFCA) and enacted the UFTA, chapter 19.40 RCW, based on the model Uniform Fraudulent Transfer Act 7A U.L.A. 2 (1987). Under both the UFCA and the UFTA, actual or constructively fraudulent transfers are voidable. But the UFTA expressly allows for a judgment against a transferee for the value of the assets transferred absent proof that the transferee acted in good faith and gave reasonably equivalent value. Uniform Fraudulent Transfer Act, 7A U.L.A. 6 (1984).
¶ 11 RCW 19.40.081 of the UFTA addresses the liability and defenses of transferees. RC 19.40.081 provides in pertinent part:
(a) A transfer or obligation is not voidable under RCW 19.40.041(a)(1) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.
(b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under RCW 19.40.071(a)(1), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:
(1) The first transferee of the asset or the person for whose benefit the transfer was made. . . .
(c) If the judgment under subsection (b) of this section is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require.
¶ 12 The Hansons' reliance on Deyong to argue that the UFTA requires proof of actual intent to defraud is unpersuasive. Deyong was decided under the superseded UFCA, which did not address obtaining a judgment against a transferee. In Deyong, a debtor concealed assets by transferring them to his parents. The court awarded judgment against the parents as transferees. While the court in Deyong noted that the UFCA did not address awarding a judgment against a transferee, the court held that it was "equitable" to do so, but only if the transferee "knowingly accepted the property with an intent to assist the debtor in evading the creditor and has placed the property beyond the creditor's reach." 47 Wash.App. at 347, 735 P.2d 79.
¶ 13 The Hansons also rely on Park Hill to argue that even after the UFTA replaced the UFCA, proof of the intent to defraud is required. In Park Hill, despite the plain language of RCW 19.40.081(b)(1), without analysis, Division Three held that the Deyong decision controlled and absent proof of an intent to defraud, transferees could not be held personally liable. In Park Hill, the guarantor assigned certain annual lease payments to her children. The lessor's assignee sued the guarantor and her children for the payments. The court held that under either the UFCA or the UFTA, a judgment against the transferee children was "unavailable" because there was no proof of actual intent to defraud creditors. 60 Wash.App. at 288, 803 P.2d 326. According to the court, the UFTA merely "acknowledges the remedy set forth *125 in Deyong. . . ." Park Hill, 60 Wash.App. at 287.
¶ 14 We disagree with Division Three's conclusion in Park Hill. Even in the absence of intent to defraud, the plain language of RCW 19.40.081(b)(1) authorizes judgment against the transferee. The official comments to the model UFTA also note that a constructively fraudulent transfer must be determined "without regard to the actual intent of the parties. . . ." Uniform Fraudulent Transfer Act, 7A U.L.A. 5 (1984).
¶ 15 We agree with the analysis of Division Two in Eagle Pacific Insurance Co. v. Christensen Motor Yacht Corp., 85 Wash.App. 695, 934 P.2d 715 (1997). In Eagle Pacific, Division Two squarely addressed whether proof of intent to defraud is required under the plain language of the UFTA. In Eagle Pacific, the debtor corporation transferred assets and security interests to its president and sole shareholder, David Christensen, and to the other companies Christensen owned. The trial court entered a judgment against Christensen and the other companies as transferees under the UFTA. On appeal, Division Two held that the UFTA expressly authorizes judgment against a transferee without proof of intent to defraud, but remanded to determine whether there were any unencumbered assets subject to the UFTA. The court in Eagle Pacific rejected the conclusion reached by Division Three in Park Hill because "the plain language of the UFTA permits entry of judgment even in the absence of the Deyong requirements, and . . . Park Hill should not be applied to impose those requirements." Eagle Pacific, 85 Wash.App. at 705, 934 P.2d 715.
¶ 16 Because the plain language of the UFTA does not require proof of a transferee's intent, we conclude the trial court did not err in entering judgment against the Hansons under RCW 19.40.081(b)(1).
Post-Transfer Evidence
¶ 17 The Hansons argue that the trial court abused its discretion in admitting evidence that the company's remaining assets were either foreclosed on or sold at a loss after PVH transferred Lots 66 and 68 to the Hansons in September 2000.[2]
¶ 18 A trial court's evidentiary rulings are reviewed for abuse of discretion. State v. Finch, 137 Wash.2d 792, 810, 975 P.2d 967 (1999). A trial court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971). Relevant evidence has some tendency to make a fact at issue more or less probable. ER 401. Relevant evidence is excluded if its probative value is substantially outweighed by prejudice. ER 403.
¶ 19 Under the UFTA, the trial court must determine whether "the debtor made the transfer . . . [w]ithout receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction. . . ." RCW 19.40.041(a)(2)(i). Consistent with the plain language of the statute, we conclude that the later disposition of PVH's remaining assets provides relevant circumstantial evidence of the value of the company's assets at the time of the transfers. See Chase v. City of Tacoma, 23 Wash.App. 12, 19, 594 P.2d 942 (1979).
¶ 20 Other courts also agree that in determining whether assets are unreasonably small, evidence of the value of the assets after the date of transfer is admissible. In In re Jackson, 459 F.3d 117 (1st Cir.2006), the First Circuit held that a bankruptcy court's "conclusion [that the debtor's assets were unreasonably small] is borne out by the evidence of how the debtor attempted to pay his business debts and living expenses after the transfer of the majority of his income-generating properties to the defendant." In re Jackson, 459 F.3d at 125. In In re Mama D'Angelo, Inc., 55 F.3d 552 (10th Cir.1995), the Tenth Circuit concluded that courts "may *126 consider information originating subsequent to the transfer date if it tends to shed light on a fair and accurate assessment of the asset. . . ." In re Mama D'Angelo, 55 F.3d at 556.
¶ 21 In the alternative, the Hansons argue that if evidence of the later disposition of assets is admissible, then the court erred in not considering the evidence that the Hansons only recovered $24,000 from the transferred properties and limiting their liability to that amount.[3] But because the parties stipulated that the value of the transferred properties was $465,000 and the amount of debt was $325,000, the Hansons' argument fails.
¶ 22 We conclude the trial court's admission of evidence concerning the disposition of the company's assets after the September 2000 transfers was not an abuse of discretion.
Unreasonably Small Assets
¶ 23 The Hansons challenge the trial court's conclusion that PVH transferred lots 66 and 68 to them "at a time when its remaining unencumbered assets were unreasonably small in relation to the business . . . and did not receive a reasonably equivalent value in exchange for that transfer."
¶ 24 Under RCW 19.40.041, a transfer is constructively fraudulent if the debtor makes a transfer without receiving reasonably equivalent value and the company's remaining assets are unreasonably small in relation to the business. RCW 19.40.041 provides in pertinent part:
(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.
¶ 25 The Hansons do not dispute that reasonably equivalent value was not given. But the Hansons assert that because PVH was able to continue to conduct some business, substantial evidence does not support the court's finding that PVH's remaining assets were unreasonably small. We disagree. Because virtually all of PVH's remaining assets were foreclosed on shortly after the transfer of Lots 66 and 68, substantial evidence supports the trial court's conclusion that PVH had unreasonably small assets in relation to its business.
¶ 26 Under the UFTA, "[a]sset' means property of a debtor, but the term does not include: (i)[p]roperty to the extent it is encumbered by a valid lien. . . ." RCW 19.40.011(2). Foreclosure, or sale of an asset for no net profit, means the asset was fully encumbered and therefore not an "asset" for purpose of the UFTA. The UFTA does not define "unreasonably small." Because an explicit purpose of the UFTA is uniformity among the States that have adopted it, the interpretation of other courts also provides guidance. RCW 19.40.903; Sedwick v. Gwinn, 73 Wash.App. 879, 887 n. 8, 873 P.2d 528 (1994).
¶ 27 In In re Jackson, the First Circuit held that evidence of the debtor's ability to generate enough cash from the business and remain financially stable is relevant evidence that the transfer left the debtor with remaining assets that were unreasonably small. In re Jackson, 459 F.3d at 123-124. And in Tiger v. Anderson, 976 P.2d 308, 310 (Colo. Ct.App.1998), the court held that a debtor's "exposure to liability [that is] far in excess of" his net worth supports finding unreasonably *127 small remaining assets. Tiger, 976 P.2d at 310.
¶ 28 Here, Paul Hanson was the only witness who testified about the assets and debts of PVH at the time of the transfer in September 2000. Hanson testified that, except for a $30,000 profit on a construction contract and approximately $15,000 in profits that PVH received for the sale of the house on Lot 62, all of the property PVH owned was foreclosed or sold for no profit. In September 2001, twenty lots were foreclosed and a remaining lot, Lot 69, was later sold for no net profit. In addition, in 2002, the property PVH owned in Kirkland was lost to foreclosure. Hanson also testified that the company's other assets were either lost to liens or donated to charity.
¶ 29 Substantial evidence supports the trial court's finding that PVH faced financial difficulties likely to lead to insolvency and the company's assets were unreasonably small. The trial court did not err in concluding the Hansons were liable under RCW 19.40.041(a)(2).
Judgment Offset
¶ 30 Next, the Hansons claim that under RCW 19.40.081(d)(3), they are entitled to an "offset" to the judgment in the amount of the "value" they gave PVH by assuming $325,000 in construction debt.[4]
¶ 31 PVH stipulated that the transferred properties were worth $465,000. And the parties do not dispute that the Hansons assumed $325,000 of PVH's debt. In calculating the value the Hansons received, the trial court reduced it by the amount of the debt they assumed and concluded that "the amount of up to $100,000, representing the value received by defendants above the liability incurred as a result of the transfer of the properties at issue in this case[] shall be subject to plaintiffs['] claims for damages."
¶ 32 Relying on a literal interpretation of the language in RCW 19.40.081(d)(3) stating that a good-faith transferee is entitled to a reduction in the amount of the liability to the extent of the value given, the Hansons argue the trial court erred in not reducing the judgment amount by $325,000. RCW 19.40.081 provides in pertinent part:
Defenses, liability, and protection of transferee . . .
(b) [T]o the extent a transfer is voidable in an action by a creditor under [this chapter], the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. . . .
(c) If the judgment under subsection (b) of this section is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require.
(d) Notwithstanding voidability of a transfer or an obligation under this chapter, a good-faith[5] transferee or obligee is entitled, to the extent of the value given the debtor for the transfer or obligation, to:
(1) A lien on or a right to retain any interest in the asset transferred;
(2) Enforcement of any obligation incurred; or
(3) A reduction in the amount of the liability on the judgment.
RCW 19.40.081.
¶ 33 While the UFTA contains no legislative findings, the prefatory note to the model UFTA states that the purpose of the *128 provisions in RCW 19.40.081 is to "prescribe[] the measure of liability of a transferee or obligee under the Act and enumerate[] defenses." Uniform Fraudulent Transfer Act, 7A U.L.A. 6 (1984) (emphasis added). The prefatory note further explains that "[a] good faith transferee or obligee who has given less than a reasonable equivalent is nevertheless allowed a reduction in a liability to the extent of the value given." Id. (emphasis added). These comments clarify that the purpose of RCW 19.40.081(d)(3) is to reduce the transferee's exposure to liability by the amount of value given and not to simply subtract the value given in calculating the judgment amount.
¶ 34 Here, the trial court reduced the Hansons' liability "to the extent of the value given"  the $325,000 in construction debt that the Hansons assumed. The Hansons' demand for another "offset" in the same amount would result in deducting the amount of value given twice. Such a result is contrary to the statutory purpose and would eviscerate the intent of the UFTA. While the statute is not a model of clarity, "[t]he purpose of an enactment should prevail over express but inept wording." Whatcom, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996). The statute expressly limits liability to the value received. Here, there is no dispute that the properties were worth $465,000, that the Hansons assumed $325,000 in construction debt and that the Hansons received $100,000 in equity after the transfer. The intent of the UFTA is not to grant the Hansons a second "offset" of $325,000.
¶ 35 The Hansons' interpretation of the UFTA is also inconsistent with the structure of the statute. RCW 19.40.081 protects a transferee's legitimate interest in the transferred property. Transferees are liable only for the amount they receive, which is determined based on the value received minus the value given. Subsection (b) limits liability to the value of the property received, and subsection (d) further limits liability to the net value received. Subsection (c) also requires the value to be determined at the time of transfer and subject to equity. We conclude the trial court's interpretation and application of RCW 19.40.081 correctly effectuated the intent of the statute.
Burden of Proof
¶ 36 Relying on finding of fact 7, the Hansons also argue that the trial court erred in placing the burden of proof on them to justify the transfers.[6] Finding of fact 7 states:
On September 13, 2000, ostensibly to facilitate the refinance of Lots 66 and 68 from construction financing to permanent financing, the Corporation conveyed Lots 66 and 68 to defendants. While testimony was given that this conveyance would result in a somewhat more favorable rate of interest on the loan, this conveyance was not of significant financial benefit to the Corporation. There was not sufficient evidence presented that this conveyance was necessary for the Corporation to refinance the two properties.
¶ 37 But contrary to the Hansons' argument, the court's conclusions of law clearly indicate that the burden was on the Thompsons to prove the transfers were fraudulent. In conclusion of law 2 the court holds that because "[a]ctual intent to defraud has not been demonstrated by clear and satisfactory proof[,]" the Thompsons did not carry their burden to show actual fraud. And, in conclusion of law 3 the trial court states that "[t]here is substantial evidence that the Corporation . . . transferred property to defendants and did not receive a reasonably equivalent value in exchange for that transfer." The trial court's findings of fact and conclusions of law clearly indicate the Thompsons had the burden to prove the transfers were constructively fraudulent under the UFTA.
¶ 38 We affirm the trial court's decision that the Hansons violated the UFTA and entry of judgment against the Hansons for $89,129.41.
WE CONCUR: ELLINGTON and BAKER, JJ.
NOTES
[1] Although the Thompsons sued the Hansons individually and on behalf of their marital community, the trial court's findings do not address their liability and judgment was not entered against them.
[2] The Hansons apparently do not give credence to their own argument, as they use post-transfer evidence also. See, e.g., Appellants' Brief at 24-25 ("in fact, the lot sold one month later for this price"; "the Corporation's ultimate profit . . . was approximately $30,000").
[3] The Hansons report that one property was foreclosed, yielding them no gain, and the other yielded approximately $24,000.
[4] We reject the Thompsons' assertion that the Hansons gave no value. The UFTA clearly defines "value" to include satisfaction of debt. "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied. . . ." RCW 19.40.031(a) (emphasis added).
[5] The Thompsons do not challenge the Hansons' claim to good-faith transferee status based on lack of proof of intent to defraud. The UFTA does not define good faith, but official comments to the model act state that "[k]nowledge of the facts rendering the transfer voidable would be inconsistent with the good faith that is required of a protected transferee." Uniform Fraudulent Transfer Act, 7A U.L.A. § 8. Here, we do not address good faith because the judgment against the Hansons is less than the value of the property with or without the offset.
[6] The Thompsons interpret this assignment of error as related to the conclusion that reasonably equivalent value was not given, but that conclusion was not challenged.