IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of:

PETER JOHN PETRUCCI,

                Petitioner,

    and

EMILY FARRIS PETRUCCI,

                Respondent.

No. 83451-7-I

DIVISION ONE

UNPUBLISHED OPINION

HAZELRIGG, A.C.J. — Emily Farris (formerly Petrucci) appeals from various orders associated with a dissolution action. Because she fails to demonstrate any error that necessitates reversal, we affirm.

## FACTS

Emily Farris and Peter Petrucci married in February 2008.[1] They have two children, E[2] and F. Farris left Petrucci on October 22, 2019, after a domestic violence incident and was granted a temporary domestic violence protection order (DVPO) the next day. A week later, Petrucci filed a petition for dissolution. A one-year order for protection was granted in December 2019; Petrucci moved

---

[1] The record establishes that Emily's last name was changed during the proceeding. Accordingly, we refer to Emily and Peter by their current last names.

[2] E identifies as gender nonbinary. Accordingly, we utilize they/them/their pronouns in referencing E throughout this opinion.

for reconsideration and for revision, but both motions were denied. The parties engaged in extensive high-conflict litigation leading up to a bifurcated trial, as well as after the trial concluded. The court ultimately entered a variety of orders, amended orders, and supplemental orders. Farris timely appealed. The Family Violence Appellate Project, joined by several other organizations,[3] moved this court for permission to file an amicus curiae brief. The motion was granted.

ANALYSIS

We review a trial court's parenting plan for an abuse of discretion. In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). A trial court abuses its discretion if its decision is based on untenable grounds or untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). If a court's decision "is outside the range of acceptable choices, given the facts and the applicable legal standard," or if its factual findings are unsupported, it abuses its discretion. Id. at 47. We review a court's factual findings for substantial evidence, and review "de novo whether the trial court's conclusions of law flow from its findings." In re Marriage of Raskob, 183 Wn. App. 503, 510, 334 P.3d 30 (2014). "'Substantial evidence exists if the record contains evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'" In re Marriage of Wehr, 165 Wn. App. 610, 615, 267 P.3d 1045 (2011) (quoting In re Marriage of Fahey, 164 Wn. App. 42, 55, 262 P.3d 128 (2011)). Finally, we defer to the trial judge "'for

---

[3] The other organizations are: Washington State Coalition Against Domestic Violence, King County Bar Association—Domestic Violence Legal Advocacy Project, Project DVORA | Jewish Family Service, King County Sexual Assault Resource Center, and Clark County Volunteer Lawyers Program.

purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence and credibility of the witnesses.'" In re Marriage of Bundy, 12 Wn. App. 2d 933, 938, 460 P.3d 1111 (2020) (quoting Thompson v. Hanson, 142 Wn. App. 53, 60, 174 P.3d 120 (2007), aff'd, 168 Wn.2d 738, 239 P.3d 537 (2009)).

With this standard of review in mind, we turn to Farris's assignments of error.[4]

## I.    Ruling on Domestic Violence Protection Order

Farris first contends the trial court erred as a matter of law by ruling on the existing DVPO where neither party requested related relief. She asserts the court's ruling was essentially an advisory opinion as there was no justiciable controversy since neither party had requested modification or renewal of the DVPO. Farris also argues the judge erred in applying the Freeman[5] factors in evaluating whether modification or termination of the DVPO was warranted.

"[P]rotective orders are essentially a type of injunction" and, as such, actions for a protection order are equitable in nature. Blackmon v. Blackmon, 155 Wn. App. 715, 721, 230 P.3d 233 (2010). Courts have wide equitable discretion to "'fashion broad remedies to do substantial justice to the parties and put an end to litigation.'" Hough v. Stockbridge, 150 Wn.2d 234, 236, 76 P.3d

---

[4] On reply, Farris urges this court to disregard most of Petrucci's response brief as noncompliant with RAP 9.11, 9.13, 10.3(1)(5) and (6). "[P]ro se litigants are bound by the same rules of procedure and substantive law as attorneys." Westberg v. All-Purpose Structures, Inc., 86 Wn. App. 405, 411, 936 P.2d 1175 (1997). However, it is clear in much of Petrucci's argument where he references certain testimony or reports, and we decline to reject his arguments solely for failure to cite to the record. See RAP 1.2 (requiring the rules of appellate procedure to be "liberally interpreted to promote justice and facilitate the decision of cases on the merits").

However, we decline to consider references to proceedings outside of the record before us, as presented by both parties in their respective briefing.

[5] In re Marriage of Freeman, 169 Wn.2d 664, 239 P.3d 557 (2010).

216 (2003) (quoting Carpenter v. Folkerts, 29 Wn. App. 73, 78, 627 P.2d 559 (1981)). Despite this broad authority, a trial court may not issue a ruling on the merits of a claim if it is not presented with a justiciable controversy. See West v. Thurston County, 169 Wn. App. 862, 867, 282 P.3d 1150 (2012) (citing To-Ro Trade Shows v. Collins, 100 Wn. App. 483, 490, 997 P.2d 960 (2000), aff'd, 144 Wn.2d 403, 27 P.3d 1149 (2001)). A justiciable controversy is:

> "(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

To-Ro Trade Shows, 144 Wn.2d at 411 (quoting Diversified Indus. Dev. Corp. v. Ripley, 82 Wn.2d 811, 815, 514 P.2d 137 (1973)). If there is no justiciable controversy, the court risks issuing a prohibited advisory opinion. Id. at 416.

Here, neither party requested a modification, termination, extension, or renewal of the DVPO. As the court noted, the DVPO in place at the time of trial, issued pursuant to a separate cause of action,[6] was not set to expire until January 8, 2022. Despite this, the court entered findings related to the merits of extending the DVPO, stating "[t]he acts of domestic violence that gave rise to the original DVPO on their own do not warrant a long-term domestic violence order," and "[o]n this record, after over ten days of trial, the [c]ourt finds no basis to issue a superseding DVPO of longer duration." As neither party had requested a

---

[6] The family law proceeding was linked with the protection order proceeding in December 2019.

superseding DVPO of longer duration or a long-term DVPO, there was no actual, present and existing dispute.

The court erred in entering a ruling on the merits where there was no justiciable controversy. However, no prejudice resulted from this error. The court made clear that Farris retained the right to seek renewal of the DVPO prior to its expiration on January 8. Further, the renewal would take place before a different judicial officer, rather than before the trial court who made the advisory ruling. There is no indication that the findings related to the merits of the DVPO had any prejudicial impact on Farris that would warrant vacatur of the findings of fact or conclusions of law as she requests. While Farris contends that the commissioner who considered her motion to renew the DVPO denied her motion based on the trial court's findings, she provides no citation to the record before which could support this assertion. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Further, any decision by the commissioner that considered renewal of the DVPO is outside the scope of the current appeal and, as such, we will not review it under RAP 2.4.

Likewise, the court erred as a matter of law in applying the Freeman factors. In Freeman, our state Supreme Court announced a test for analyzing whether a DVPO should be modified. Freeman v. Freeman, 169 Wn.2d 664, 672-73, 239 P.3d 557 (2010). However, the test was subsequently superseded by our state legislature. LAWS OF 2011, ch. 137, § 2. The trial court erred when it applied these factors as a matter of law, but, again, Farris demonstrates no resulting prejudice. She argues that the trial court utilized its erroneous findings

of fact related to the Freeman factors to support other rulings, but we analyze those findings of fact separately to investigate whether the findings are supported by substantial evidence and whether the trial court's conclusions of law flow from the findings.

While the trial court erred as a matter of law, no prejudice resulted and, as such, Farris fails to demonstrate a basis for relief.

## II.      Request for a Restraining Order

Farris next claims the trial court abused its discretion by failing to consider her request for a restraining order.  A trial court "abuses its discretion if it fails to exercise discretion when required to do so."  In re Adoption of A.W.A., 198 Wn. App. 918, 922, 397 P.3d 150 (2017).  Farris's assignment of error is belied by the record.  The trial court explicitly ruled on her request for a restraining order in multiple orders: the "order on respondent's motion for reconsideration and/or clarification of orders entered on August 10, 2021," and "amended findings and conclusions about a marriage," issued on October 11, 2021, and the "supplemental final divorce order" entered on November 4, 2021.  The court denied her request each time.  The trial court did not abuse its discretion.

## III.     Substantial Evidence of Rehabilitation

Farris argues the court's findings related to Petrucci's rehabilitation are unsupported by substantial evidence.  She avers that these findings, though mainly used in the trial court's analysis of the DVPO, were also utilized to support the residential schedule, decision-making about the children's education, and

attorney fees.   The court found "there was a history of domestic violence," specifically based on "the father's infliction of fear of imminent physical harm, bodily injury or assault, which resulted in a DVPO."   However, the court also found that "the father commendably took ownership of his role in the toxic relationship and was found to have taken responsibility for his actions in his DV treatment with Dr. Adrienne Casteele."   It additionally found Petrucci would no longer be entangled in litigation around the children.

Farris argues Petrucci attacked her character and denied violent acts during the trial, undercutting the court's finding that Petrucci had taken ownership of his previous acts of domestic violence.   Throughout trial, Farris and Petrucci provided differing accounts of conflict that took place during their marriage. Farris characterized incidents as domestic violence, while Petrucci interpreted the same incidents as innocuous disagreements or mutual mistreatment. Petrucci contested Farris's report of the incident giving rise to the initial DVPO, and stated that he "came to the door, did not touch the door, put my arms behind my back, and asked if there was anything she needed or we could do to deescalate this."   He testified that the children were sitting on the couch watching TV at the time.   This account differed significantly from Farris's, who testified that Petrucci yelled at her, pounded on the door, and that E was using an Xbox guitar controller to protect themselves and their sister from Petrucci.   The court found Farris's testimony about the event credible.   The court also found Farris's testimony credible regarding an incident where Petrucci put his hand over F's mouth to stifle her screaming.   The parties disputed incidents where Petrucci

allegedly broke a dashboard of a vehicle, yelled at Farris after E was born, or pressured Farris into unwanted sexual contact. They also disputed incidents that involved vulgar or demeaning language, financial control, and accessing a private online journal. Throughout trial, Petrucci provided testimony that was, at times, internally inconsistent and at times contradictory. He explicitly admitted during his testimony that he had a problem with rage and that he had a "physical overbearing presence in the house." However, he also testified that during the marriage he did not see himself "as a threatening, imposing guy;" rather, he would try "to remain as unimposing and unrecognized as possible."

During his testimony, Petrucci expressed frustration with the DVPO. He testified that in the course of the dissolution proceedings, particularly when it came to visitation issues, "the DVPO was waved at me as a stick." He stated, "in the last 19 months, I have lived in fear of that DVPO, and it has been used like a stick to ward me off or to threaten me." The court found that Petrucci violated the DVPO several times shortly after its issuance, including by hiring a private investigator to locate Farris's vehicle. Petrucci also testified that he felt mistreated by Farris during their marriage. He testified that he had no power or voice, and stated that he "couldn't set boundaries with Ms. [Farris]," and, "I simply felt like I had no voice," particularly related to educational decisions. Farris contends that this frustration with the DVPO and criticism of her behavior or choices undercuts the court's finding that Petrucci took accountability for his harmful behaviors. However, Petrucci's testimony about his perceptions of

mistreatment and frustration are not mutually exclusive from demonstrating accountability for past harmful behavior.

It is uncontested that Petrucci successfully engaged in individual mental health services, domestic violence evaluation and the resulting treatment plan, and parenting courses. In addition to this uncontested testimony, the court made several relevant credibility determinations. It found credible Petrucci's and Casteele's testimony that Petrucci was compliant with domestic violence treatment and Hughes's testimony that Petrucci "owned" his responsibility for the harmful dynamic and harm to the children. It also made an explicit credibility determination as to Petrucci's testimony regarding his violations, that "he did not appreciate the stringency of the DVPO provisions, and that these behaviors stopped." Finally, it found Petrucci "was credible at trial that he recognized his role in the parties' toxic relationship, that all firearms have been surrendered, and that he has no interest in interacting with the mother except to the extent the parties must exchange the children." As an appellate court, we do not re-evaluate any of these credibility determinations. Bundy, 12 Wn. App. 2d at 938.

Ultimately, this court will accept the trial court's findings of fact so long as there is sufficient evidence "to persuade a fair-minded person of the truth of the matter asserted." Katare v. Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). The trial court has the unique benefit of hearing the testimony live and observing the demeanor of witnesses. In re Dep. of A.V.D., 62 Wn. App. 562, 568, 815 P.2d 277 (1991). We defer to the trial judge to resolve conflicting testimony; "'[w]e do not reweigh or rebalance competing testimony and inferences even if

we may have resolved the factual dispute differently.'" Bundy, 12 Wn. App. 2d at 938 (quoting Bale v. Allison, 173 Wn. App. 435, 458, 294 P.3d 789 (2013)). Consistent with controlling case law, we defer to the trial judge here, who had the benefit of observing all parties live during the multi-day trial, to resolve conflicting testimony and weigh evidence. While much of Farris's briefing emphasizes evidence which she argues supports a contrary finding under the statute, that is not the test we apply on appeal. Rather, our review is limited to determining "'whether the evidence most favorable to the prevailing party supports the challenged findings, even if the evidence is in conflict.'" In re Marriage of DeVogel, 22 Wn. App. 2d 39, 48, 509 P.3d 832 (2022) (quoting Thomas v. Ruddell Lease-Sales, Inc., 43 Wn. App. 208, 212, 716 P.2d 911 (1986)). There is substantial evidence to support the court's findings that Petrucci has acknowledged wrongdoing and taken responsibility for his harmful actions, and will no longer be entangled in litigation with regard to the children.

IV.    Residential Schedule

Farris argues the trial court abused its discretion by placing the children with Petrucci half of the time based on RCW 26.09.191(2)(n). She avers the evidence does not support application of the statutory exception.

Under RCW 26.09.191(2)(a), a trial judge must limit a parent's residential time if the parent has previously committed acts of domestic violence. However, the court need not limit the residential time:

> [i]f the court expressly finds based on the evidence that contact between the parent and the child will not cause physical, sexual, or emotional abuse or harm to the child and the probability that the

- 10 -

parent's or other person's harmful or abusive conduct will recur is so remote that it would not be in the child's bests interests to apply the limitations . . . of this subsection.

RCW 26.09.191(2)(n). In conducting this analysis, the court has discretion in determining how much weight to give "to the existence of a protection order." Id.

Farris largely relies on the testimony of parenting evaluator Margo Waldroup in support of her challenge. Waldroup conducted a parenting evaluation of both Farris and Petrucci. Farris correctly identifies that Waldroup had concerns about E's screen time and the content of the video games that Petrucci allowed E to play. Waldroup also testified that she "didn't like that" Petrucci "would sometimes ask [F] to move or to engage in problem solving" when conflict between the siblings was caused by E's behavior. During questioning regarding E's dysregulated behavior, Waldroup answered that she thought Petrucci could "possibly" handle a situation in the home where E put F in danger while dysregulated.

However, Waldroup also testified that she did not believe Petrucci needed to be supervised in his visitation with F as of December 2020. She recommended "a very short phase-in where the supervisor would be involved just in part of it" and then to "absolutely start lengthening the visits." Waldroup testified, "I picture [F] going to overnights rather quickly," and then she would recommend moving "to spending the entire weekend and alternate weekends," from "Wednesday after school through Monday morning return to school." Her recommendation for E, however, was "[f]ar more complex." In December 2020,

she recommended "two additional months of supervision,"[7] and that "[E] should be with [their] father each Saturday or Sunday for six hours." In Waldroup's suggested plan, this visitation would increase and eventually result in "a schedule of every other weekend from Friday after school until Monday morning return to school, and then also have that opposite Wednesday with [F] and [their] father." However, Waldroup also stated she was unable to predict whether there would be any barriers to a parenting plan for E that placed them with each parent on alternating weeks, even if they were "doing well in school and in general on the home front." She additionally testified that she felt Petrucci had taken accountability, had learned new skills, and wanted "to do things better and create healing in the family."

Dr. Mollie Hughes, who taught Petrucci in two parenting courses, also testified at trial. She testified that, as the course progressed, Petrucci began "moving from this victim mentality more toward the effect that type of thinking had on his partner and also on his children." Her ultimate conclusion was that Petrucci had made progress in taking accountability for his actions.

As to the court's finding that Petrucci's abusive or harmful conduct is unlikely to recur, the court found Petrucci was compliant with domestic violence treatment. Petrucci was evaluated by and attended domestic violence training with Casteele. She testified at trial that Petrucci was "very much engaged" in the curriculum, and that "he's been actively participating with accountability and

---

[7] At the time of trial, Petrucci had already completed four additional months of supervised visitation and Waldroup did not think the supervision requirement was necessary with regard to Petrucci's future visitation with E.

responsibility for his actions," such that Casteele changed her recommendation from a 12-month program to a 9-month program.

In addition to the testimony of Waldroup, Hughes, and Casteele, the trial court's credibility determinations and unchallenged findings of fact support its application of RCW 26.09.191(2)(n). The court found Petrucci's testimony credible that he has not held F's mouth shut again; we do not review such a determination. See Bundy, 12 Wn. App. 2d at 938. The court also stated, "the Court does not find that the father has done anything since separation to cause [E] fear and that any ongoing apprehension likely results from the irregular schedule and complications related to [E]'s autism and other conditions." Farris does not challenge this finding and, as such, it is a verity on appeal. See Raskob, 183 Wn. App. at 510 ("Unchallenged factual findings are verities on appeal.").

Again, we defer to the trial court to resolve conflicting testimony. Bundy, 12 Wn. App. 2d at 938. While Waldroup testified that she had some concerns regarding Petrucci's parenting skills, there is sufficient evidence to support the trial court's finding that contact between Petrucci and the children will not cause them harm. The court's finding that domestic violence is unlikely to recur is also supported by substantial evidence. The court's application of RCW 26.09.191(2)(n) flows from these findings and, as such, the court did not abuse its discretion.

V.      Educational Decision-Making

Next, Farris contends the trial court erred as a matter of law by permitting Petrucci decision-making authority over education decisions in contradiction of RCW 26.09.191(1)(c).  We review a trial court's decision about parental decision-making authority for an abuse of discretion.  In re Marriage of C.M.C., 87 Wn. App. 84, 86, 940 P.2d 669 (1997).  Under RCW 26.09.191(1)(c), a judge may not require mutual decision-making or alternative dispute resolution if a parent has engaged in "a history of acts of domestic violence as defined in RCW 7.105.010."  Here, the court found Petrucci has a history of domestic violence and is subject to limitations.  However, the court concluded that "the allocation of education-related decision-making authority should not operate to override altogether the father's ability to influence the children's education if the mother decides she wants to return to homeschooling the children."  The court's order states that, if the mother decides to homeschool the children, "she must notify the father 90 days in advance" so that the father may seek relief from the court.

In In re Marriage of Mansour, the trial court restricted a mother's sole decision-making authority by preventing her from enrolling the child in extracurricular activities or obtaining in non-emergency health care that would incur additional expense, absent agreement or court order.  126 Wn. App. 1, 10-11, 106 P.3d 768 (2004).  This court held that such an order was an abuse of discretion.  Id. at 10.  However, this court also explained that the trial court could alleviate any concern about the financial well-being of the parties "by requiring that the mother give sufficient notice to the father of decisions that would incur

- 14 -

significant costs . . . so the father is able to seek timely court intervention if he chooses." Id. at 11. Under this clear authority, the trial court did not award Petrucci decision-making authority in violation of RCW 26.09.191(1)(c), but permissibly required that Farris provide notice prior to utilizing her sole decision-making authority in a particular way.

Farris has sole authority to make educational decisions, but if she chooses to homeschool the children she must give notice so Petrucci may seek relief from the court if he so chooses. Petrucci has no authority to make decisions, only an avenue to seek such relief; notably, one he would be free to pursue even without advance notice regarding such a change. Nothing in RCW 26.09.191(1) forbids a parent who has engaged in acts of domestic violence from seeking relief in court. To the contrary, the statute explicitly and exclusively permits resolution of disputes through court action. RCW 26.09.191(1). The court did not err.

## VI.    Attorney Fees

Farris requests attorney fees associated with this appeal as well as the preceding trial. Under RAP 18.1(a) and RCW 26.09.140, this court may award attorney fees on appeal associated with a dissolution action. C.M.C., 87 Wn. App. at 89. We consider the parties' financial resources as well as the merit of the issues presented on appeal. Id. The trial court found that Petrucci had no ability to pay Farris's attorney fees. Based on the merits of the issues Farris

raises on appeal and the court's finding that neither party has the ability to pay the others' fees, we decline to award Farris fees.[8]

_____
Hazelrigg, A.C.J.

WE CONCUR:

_____   _____
Chung, J.                     Feldman, J.

---

[8] Because reversal is not warranted here, we need not reach Farris's argument that she is entitled to attorney fees on remand, nor her argument that matters on remand must be heard by a different judicial officer.