# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Parenting and Support of | No. 84342-7-I |
| S.B., | DIVISION ONE |
| Child, | UNPUBLISHED OPINION |
| LAURENCE BATEMAN, | |
| Respondent, | |
| and | |
| PHAVY PEL, | |
| Appellant. | |

BIRK, J. — Phavy Pel appeals from a parenting plan and child support order entered after a bench trial. Finding no error, we affirm.

I

In May 2021, Laurence Bateman petitioned to establish a parenting plan for S.B., the then six year old daughter he shares with Pel. Bateman alleged Pel had withheld S.B. in violation of a CR 2A agreement the parties had reached in an earlier parenting plan proceeding, which was administratively dismissed without final orders being entered. Bateman requested that he be designated S.B.'s primary residential parent and "that [S.B.]'s time with her mother be returned to alternating weeks from Friday to Sunday, which is the same number of overnights

that she had for a year before [the parties] settled." He also requested child support. Pel opposed Bateman's requests and sought a 50-50, week on/week off residential schedule. Pel agreed child support should be set, but requested a deviation downward.

Following a four day trial, the court found Pel had "engaged in an abusive use of conflict." It ordered that S.B. would have majority residential time with Bateman, and would have residential time with Pel after school on Wednesdays and every other weekend. The trial court ordered Pel to pay Bateman $676.00 per month in child support beginning in May 2022, and it denied Pel's request for a deviation. Pel appeals.[1]

II

We review a trial court's rulings concerning parenting plans and child support for an abuse of discretion. In re Marriage of Christel, 101 Wn. App. 13, 20-21, 1 P.3d 600 (2000) (parenting plan); In re Marriage of Fiorito, 112 Wn. App. 657, 663, 50 P.3d 298 (2002) (child support). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or

_____

[1] On July 12, 2023, the day after this matter was set for hearing before the court, this court received additional clerk's papers designated by Pel in filings in superior court on June 23, 2023. These designations of clerk's papers are untimely and without leave of court under RAP 9.6(a). Also, it appears the additional clerk's papers were filed after trial and were not before the trial court, and some of them were the subject of a commissioner's earlier ruling denying Pel's motion for an extension of time to supplement the record with the same documents. The additional clerk's papers are not properly before the court, and we have not considered them. We note that although Bateman also filed an untimely designation of trial exhibits on May 26, 2023, that designation specified only trial exhibits that had already been designated in a timely supplemental designation of clerk's papers filed herein on March 6, 2023.

untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). A court bases its decision on untenable grounds if the record does not support the court's factual findings, the court used an incorrect standard, or the facts do not meet the requirements of the correct standard. In re Marriage of Mansour, 126 Wn. App. 1, 8, 106 P.3d 768 (2004).

We review challenged findings of fact to determine if substantial evidence supports them. In re Marriage of DeVogel, 22 Wn. App. 2d 39, 48, 509 P.3d 832 (2022). Evidence is substantial if it is "sufficient to persuade a rational fair-minded person the premise is true." Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). "We will not substitute our judgment for the trial court's, weigh the evidence, or adjudge witness credibility." In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999).

Pel appeals pro se. Pro se litigants are held to the same standards as attorneys and must comply with all procedural rules on appeal. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). Pel's opening brief does not clearly specify any assignments of error, as required by RAP 10.3(a)(4) and RAP 10.3(g). Pel nevertheless articulates certain dissatisfactions with the trial court's rulings sufficient to permit review, and to that extent we review Pel's claims on appeal. To the extent we do not reach any challenges that Pel raises in her appellant's brief, it is because they are not adequately briefed to warrant consideration. Cf. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) (appellate court "will not consider an inadequately briefed argument").

3

A

Pel argues substantial evidence does not support the trial court's finding that she engaged in an abusive use of conflict. We disagree.

The trial court made the following findings: Pel petitioned for a domestic violence protection order (DVPO) after an October 2019 incident during which Pel alleged Bateman assaulted her.[2] "On that basis, [Pel] obtained an *ex parte* order restraining all contact between [S.B.] and [Bateman]." While Pel's DVPO petition was pending, Bateman asked to have contact with S.B., supervised by his mother. Pel denied the request "on the basis that [Bateman's mother] would 'cross the line' with her advice," but "[t]his basis was not a sufficient basis to deny supervised residential time to the petitioner and [was] contradicted by the many videos offered into evidence . . . that depict[ed] the warm relationship of [Bateman's parents] with all the members of the family as well as [Pel and Pel's] older children."[3] Additionally, Pel's stated basis for denying Bateman's request "[was] not relevant to [S.B.'s] safety," and Pel still denied the request even after Bateman proposed professionally supervised contact.

---

[2] Pel's petition was later denied because she failed to prove by a preponderance of the evidence that domestic violence occurred.

[3] Pel asserts that Bateman's parents "are drug addicts." But she provides no citation to the record to support this assertion. Nor does she provide any citation to the record to support her assertion, made for the first time in her reply brief, that the trial court's "abusive use of conflict" finding was based on Pel's "demand that supervisors be sober during visitation." We do not consider these assertions. See RAP 10.3(a)(5) ("Reference to the record must be included for each factual statement."); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (declining to consider argument that was not supported by any reference to the record).

The trial court also made the following findings: Pel and Bateman entered into a CR 2A agreement wherein they agreed that S.B. would reside primarily with Bateman, and they "would have formalized this Agreement into a final parenting plan had [the first parenting plan matter] not been administratively dismissed." Pel "repudiated the parties' agreement, taking [S.B.] in violation of the agreement." She then "kept [S.B.] for an additional several day period on the basis that there was no action, no temporary order, and no agreement." Furthermore, Pel's "explanation that she was not represented by counsel [did] not justify her conduct," because "[o]n a practical level, [she] knew that the parties had signed a contract; she did not need to have the technicalities of an administrative dismissal explained to her to understand her obligation under the agreement." Meanwhile, Bateman "offered to deliver [S.B.'s stuffed animal called] 'Piggy' to [Pel] so that [S.B.] could have her stuffed animal that she is attached to." Bateman also "offered to deliver [S.B.]'s school work to her so that she would not miss school or have late assignments." But Pel rejected both offers.

The foregoing findings are unchallenged and thus accepted as true on appeal. See DeVogel, 22 Wn. App. 2d at 50. They establish that Pel interfered with Bateman's time with S.B. in a manner that, as the court found, "may harm [S.B.]'s best interests." They support the trial court's determination that Pel used conflict in an abusive way, to unreasonably interfere with Bateman's time with S.B.[4]

---

[4] In her reply brief, Pel argues further that substantial evidence did not support a finding that her conduct created a danger of serious damage to S.B.'s psychological development. See RCW 26.09.191(3)(e) (authorizing the trial court to "preclude or limit any provisions of the parenting plan" based on "[t]he abusive

Cf. DeVogel, 22 Wn. App. 2d at 50 (parent engages in abusive use of conflict by "us[ing] conflict in an abusive way").

Pel argues the CR 2A agreement stated that Bateman's counsel would "prepare the final papers within 14 days" and "present the final papers to the court for testimony/entry within 14 days of agreement by all parties on the final documents or after arbitration." (Bold face omitted.) She asserts Bateman and/or his attorney breached the CR 2A agreement because they did not file final orders, causing the first parenting plan proceeding to be administratively dismissed. But the trial court observed that as a "practical" matter, Pel understood her obligation under the agreement but relied on a technicality to assert that "all bets [were] off." The court "did not find that credible" and found Pel's "conduct [was] unreasonable." An appellate court will not revisit that credibility determination on appeal.[5]

The trial court's ruling concerning abusive use of conflict under RCW 26.09.191 is supported by unchallenged findings and by substantial evidence.

---

use of conflict by [a] parent which creates the danger of serious damage to the child's psychological development"). Pel raises this argument for the first time in her reply brief, and thus, we do not consider it. See Ainsworth v. Progressive Cas. Ins. Co., 180 Wn. App. 52, 78 n.20, 322 P.3d 6 (2014) ("We will not consider issues argued for the first time in the reply brief."). In any case, it is accepted as true on appeal that Pel's abusive use of conflict resulted in significant interruptions in S.B.'s contact with her father, with whom she shared a close bond. Cf. In re Marriage of Burrill, 113 Wn. App. 863, 872, 56 P.3d 993 (2002) ("severe impairment of parent/child contact . . . constitutes sufficient evidence from which the trial court could conclude that [a parent] created a danger of serious psychological damage to the children").

[5] In her reply brief, Pel argues based on commercial contract cases that the asserted breach of the CR 2A agreement by Bateman excused her further performance. The trial court's determination Pel lacked credibility in asserting she could unilaterally keep S.B. for residential time contrary to the parties' agreement obviates the need to address this argument.

B

In the earlier parenting plan proceeding, the court referred the parties to Family Court Services (FCS) for a parenting plan evaluation, which was completed in December 2020 and admitted into evidence in this proceeding. Pel argues the trial court erred by not ordering an updated FCS report or appointing a guardian ad litem (GAL). But it does not appear Pel requested an updated report or a GAL below, and arguments not raised in the trial court generally will not be considered on appeal. See RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court."). Furthermore, although Pel cites to RCW 26.12.175 and RCW 26.12.190 in support of reversal, these statutes provide only that the trial court "may" appoint a GAL or use FCS services under certain circumstances. RCW 26.12.175(1)(a); RCW 26.12.190(2). Here, the trial court had before it a recent FCS evaluator's report, and Pel does not cite any authority establishing that the trial court was required to order an updated report or appoint a GAL. Pel does not establish that the trial court erred.

C

Pel raises two constitutional challenges to the trial court's parenting plan. First, she argues a provision directing S.B.'s physicians to accept Bateman's reports over Pel's in the event of a conflict violates Pel's rights under the First Amendment to the United States Constitution. Pel does not show the provision implicates her First Amendment rights. Second, she argues the trial court deprived her of her right to a fair trial under the Sixth Amendment to the United States Constitution. The Sixth Amendment does not apply because it applies only to

7

"criminal prosecutions." U.S. Const., Amend. VI. Pel's constitutional challenges fail.

D

The parenting plan requires Pel herself—and not a designee—to drop S.B. off at school on Monday mornings after Pel's weekends with S.B. Pel argues this requirement is error.

Bateman requested Pel's weekend time with S.B. end on Sunday evening, arguing that "[i]t would be in [S.B.'s] best interest, especially at her young age, to be able to come home and recuperate and get ready for school and sleep in her regular bed." Pel advocated for more time with S.B., testifying she was already taking S.B. to school on Mondays and had the work flexibility to continue doing so. The trial court allowed S.B. to stay with Pel through Sunday night but directed that Pel herself drop S.B. off at school on Monday morning, and that if she could not, her weekend time would end on Sunday at 6:00 p.m. The reason for this was to maximize S.B.'s time with Pel, as Pel's counsel did not object when Bateman's counsel observed "the whole idea [was] for [S.B.] to spend time with [Pel] on Monday mornings." It was not error for the trial court to recognize that Pel's employment circumstances could change, and that if she were unable because of work to drop S.B. at school on Mondays the purpose of this schedule would be defeated. Pel does not show an abuse of discretion.

E

Pel asserts the trial court erred by failing to consider all of the statutorily required factors in establishing the parenting plan. See RCW 26.09.187(3) (setting

8

forth seven factors the court "shall consider" in cases "[w]here the limitations of RCW 26.09.191 are not dispositive of the child's residential schedule"). Pel relies on In re Marriage of Kovacs, but that case is distinguishable because there, the court erred by interpreting the relevant statute "to *require* placement with the parent who has provided primary daily care of the child, unless the trial court finds that the personality or parenting style of the primary caregiver has resulted in harm to the child." 121 Wn.2d 795, 802, 854 P.2d 629 (1993). Pel points to nothing in the record to show that the trial court relied on any such presumption here. To the contrary, the court considered on the record each of the statutory factors in determining the residential schedule. Pel does not show error.

F

Pel asserts the trial court erred to the extent that it did not grant her request for a 50-50 residential schedule. She contends a 50-50 schedule would have been in S.B.'s best interests because "[m]any studies show that having the presence of both parents in a child['s] life is beneficial and in the best interests of the child" and Pel "works in the city [where S.B.] attends school and lives in the bordering school district."

Pel does not cite the "[m]any studies" she relies on, or show that they were presented to the trial court. Cf. Morgan v. Briney, 200 Wn. App. 380, 394, 403 P.3d 86 (2017) (this court does not accept evidence that was not before the trial court). The trial court's parenting plan did not deprive S.B. of Pel's presence in her life. While the record reflects that Pel lives in Renton and works in Issaquah, where S.B. attends school, Bateman testified that "the commute from Renton to [S.B.'s

9

school . . . could be up to 45-minutes per day"; that "[e]arly in the morning, it will just take away from her sleep schedule, [which] gets her kind of out of whack"; and that it was logistically easier for S.B. to stay with him. There was conflicting evidence as to what was in S.B.'s best interests with regard to her commute to school. We will not reweigh that conflicting evidence. See Thompson v. Hanson, 142 Wn. App. 53, 60, 174 P.3d 120 (2007) ("An appellate court defers to the trier of fact for purposes of resolving conflicting testimony."), aff'd, 168 Wn.2d 738, 239 P.3d 357 (2009).

Pel asserts the trial court abused its discretion because the parties "ha[d] a history of . . . 50/50 physical residential time." But the trial court weighed the evidence and found that Bateman "had taken on a greater share of the parenting responsibilities for [S.B.]," explaining,

> [Pel] was working, she was going to school, and she had older children. In her mind, she was still primary caretaker of [S.B.] And with all due respect, I can't find that. How can you have all of these other obligations and still feel that you are a primary caretaker versus the father who had none of those obligations by circumstances and was caring for her?

It thus rejected Pel's claim that the parties had historically had a 50-50 residential schedule, finding instead that the Bateman home was S.B.'s "constant home." Again, we will not reweigh the evidence to reach a different determination on appeal.

Pel asserts the trial judge "testified as a witness" when he explained why he found that Bateman had taken a greater share of the parenting responsibilities, but the trial judge did not testify. He explained why the evidence did not support a

10

finding that Pel was S.B.'s primary caretaker and instead supported a finding that Bateman was. This finding was supported by the record: Bateman testified he was "a stay-at-home father for [S.B.] and raise[d] her full time." Bateman's mother testified that after Pel and Bateman broke up in early 2017, S.B. would spend "[m]aybe a maximum . . . of a couple weekends a month" at Pel's home. Similarly, Bateman testified that after he and Pel broke up, he "was still taking care of [S.B.] the vast majority of the time," and S.B. would sometimes go as long as a month without going to Pel's home "because [Pel] was always busy working or doing other stuff." Pel's assertion that the trial court's finding was untenable or contrary to the evidence is without merit. Cf. DeVogel, 22 Wn. App. 2d at 48 (in substantial evidence review, this court need consider only the evidence most favorable to the prevailing party, even if there is conflicting evidence).

Pel also argues that the trial court abused its discretion "in not considering the testimony of [Pel's] expert witness . . . regarding increasing residential time for . . . Pel." But the trial court did consider Pel's expert's testimony, noting it established S.B. had a bond with Pel, but that did not take away from other evidence showing S.B. had a bond with Bateman. To the extent that the trial court did not rely on Pel's expert as Pel would have liked, we defer to the trial court. See In re Marriage of Bundy, 12 Wn. App. 2d 933, 938, 460 P.3d 1111 (2020) (appellate court defers to trier of fact for purposes of evaluating the persuasiveness of the evidence and credibility of witnesses).

G

Pel asserts that the trial court abused its discretion in determining the child support transfer payment. Pel argues the court did not account for the "additional assets of Mr. Bateman when he provided financial information that shows he is a joint signer, authorized user[ ] on several checking, savings, credit care, and investment accounts," and directing child support payments to begin in May 2022 resulted in an overpayment to Bateman. Pel provides no citation to the record to support her assertions that Bateman had "additional assets" that should have been considered or that she already paid child support for May 2022.

Pel also asserts that because Bateman lives with his parents and does not contribute to the household financially, the trial court "should have also considered a deviation . . . due to [Bateman']s little to no bills and rent." But although Pel requested a deviation based on her having two other children, she did not request a deviation based on the fact that Bateman lives with his parents. Accordingly, she failed to preserve this issue for appeal. Similarly, Pel argues that support should be reduced on the ground that Bateman is voluntarily underemployed. But the trial court imputed to Bateman the income he received under the G.I. Bill and found it was equivalent to the amount he earned when employed. Pel's assertion of voluntary underemployment is unsupported by the record.

III

Bateman requests an award of fees on appeal based on RCW 26.26B.060, which he asserts "provides that in an action for establishment of a parenting plan, a trial court may order one party to pay the reasonable attorney fees of another

party" without consideration of the parties' financial resources. But that statute was enacted as part the Uniform Parentage Act, which governs actions to establish parentage. See LAWS OF 1976, ch. 42, §§ 4, 15. We are not persuaded it authorizes an award of fees in a parenting plan proceeding where, as here, parentage was previously established. Cf. In re Marriage of T, 68 Wn. App. 329, 842 P.2d 1010 (1993) ("While RCW 26.09 governs matters such as child custody, visitation and support that arise *after* paternity has been established, *issues related to paternity itself are addressed by RCW 26.26*." (emphasis added)).

Bateman also argues that an award of fees is warranted because of intransigence. " 'Intransigence is the quality or state of being uncompromising.' " In re Marriage of Raskob, 183 Wn. App. 503, 517, 334 P.3d 30 (2014) (quoting In re Marriage of Schumacher, 100 Wn. App. 208, 216, 997 P.2d 399 (2000)). Although the trial court found in Bateman's favor on a number of contested issues and although Pel's arguments on appeal lack merit, we are not persuaded that Pel's appeal is intransigent, and we observe that the trial court declined to make a finding of intransigence. Cf. In re Marriage of Sievers, 78 Wn. App. 287, 312, 897 P.2d 388 (1995) (upholding award of attorney fees based on intransigence where one party's "bad acts permeated the entire proceeding").

Finally, Bateman argues that we should award fees as a sanction because Pel's appeal is frivolous. Pel's arguments approach frivolousness in some instances. However, while Pel shows no basis for appellate relief, she articulates reasoned challenges to the trial court's rulings such that, giving her the benefit of

the doubt at this stage, we do not find her appeal is frivolous.  See Streater v. White, 26 Wn. App. 430, 434-35, 613 P.2d 187 (1980).

We affirm and deny Bateman's request for fees on appeal.

_Birk, J._

WE CONCUR:

_Chung, J._          _Mann, J._